SLUSSER, TAYLOR & COMPANY v. THE CITY OF BURLINGTON.

1. **Evidence:** ABSENCE OF WITNESS. Where a witness is absent evidence to show what his testimony was upon a former trial of the case is not admissible without a showing of diligence to procure either the attendance or deposition of the witness.

2. **Contract:** EVIDENCE. In an action upon a written contract with a city to cut down the grade of a street to the established grade evidence tending to show that the city engineer, before the contract was executed, pointed out to the contractor where the established grade was, and indicated it by the position of certain stakes, and that afterward he removed the stakes to another position, so as to require the excavation to be made deeper, was *held* to be admissible.

3. ————: QUANTUM MERUIT: MUNICIPAL CORPORATION. The contractor was entitled to recover for his labor and expenditures in making the excavation below the line represented by the engineer to be the established grade, if he notified the city that he considered the additional work not to have been included in his contract, and to be additional thereto, and if the city or its proper officers knew that he had relied upon the representations of the engineer respecting the grade.

*Appeal from Des Moines District Court.*

FRIDAY, DECEMBER 7.

THE plaintiffs entered into a written contract with defendant, by which they agreed to excavate a certain part of High Street, in said city, to the established grade, the work to be done in a workmanlike manner, under the direction of the Internal Improvement Committee of the city council and the engineer, to their approval. The price fixed for said work by the contract was seventeen cents per cubic yard.

The plaintiffs aver that prior to making the contract they went to the engineer of defendant for the purpose of ascertaining where the grade of High Street was, as established by ordinance of said city, and said engineer pointed out to defendants the depth of excavation which would be required to reach the established grade at certain points within the part of the street embraced in the contract; that when plaintiffs entered upon the work said engineer gave them the same directions as to depth of excavation; that plaintiffs, relying on the repre-

sentations so made prior to entering into the contract, entered upon the work; that said representations were not true; that the established grade of High Street was much lower than represented by said engineer, and that below the line represented and pointed out by said engineer there was a large quantity of rock and other hard material, which plaintiffs removed, and that the reasonable value of removing the same was $1.00 per cubic yard.

Plaintiffs ask judgment for the reasonable value of the work in removing said rock and other hard material. The answer admits the execution of the contract, and avers that what plaintiffs have done thereunder they have been fully paid for as per contract. There is a general denial of the other averments of the petition.

There was a trial by jury and verdict and judgment for plaintiffs. Defendant appeals.

*J. & S. K. Tracy*, for appellant.

*Powers & Antrobus* and *C. L. Poor*, for appellees.

ROTHROCK, J.—I. Plaintiffs made additional claims for work done in excavating and removing earth from another street, and for certain other work done on High Street. The foregoing statement of facts, however, contains the substance of the issues so far as embraced in the appeal to this court. The others, not being necessary to be stated, are omitted for the sake of brevity.

1. EVIDENCE: absence of witness.

There had been a previous trial of the cause in the court below, in which trial one Isaac Herrill was a witness for the defendant. The witness not being present at the last trial counsel for defendant offered in evidence a transcript of his testimony on the former trial, taken and filed by the shorthand reporter, the offer being made upon the alleged ground that the witness was without the jurisdiction of the court, having removed to the State of Missouri. Objection having been made the defendant introduced a bailiff of the court, who stated under oath that he received a subpœna for the witness on the 11th day of October, 1876 (which was the same

day the trial commenced), that he failed to find the witness, that he was gone, and that he was advised he had removed to Caldwell county, Missouri.

One of defendant's counsel testified that at the time the subpœna was issued he supposed the witness was a resident of Burlington, and that he did not discover his absence until the return of the subpœna.

The court found that the evidence was material, as tending to support the issue upon the part of the defendant, but rejected the testimony because no sufficient ground had been laid for its introduction. This ruling of the court is assigned for error.

Whether the transcript of the testimony of a witness made by a short-hand reporter can, under any state of facts, be admissible upon a subsequent trial, we need not now determine. The question does not really arise in the case. We are agreed, however, that the mere fact of the absence of the witness is not sufficient to allow the transcript of his testimony to be introduced. The rule, that the testimony of a deceased witness upon a former trial is admissible, is one of necessity. The witness cannot be produced or his evidence taken upon commission. This rule has no application where the only showing made is that the witness, although living, is beyond the reach of a subpœna. In such cases we think a showing of diligence to procure the attendance or deposition of the witness should be required. The subpœna for this witness was not placed in the hands of the officer for service until the day upon which the trial was commenced, and the defendant was not aware of the removal of the witness until the next day. We concur with the court below that this was not a sufficient showing of diligence.

It does not appear when the witness removed. It may have been if a subpœna had been placed in the hands of an officer for service within a reasonable time before the trial the attendance of the witness would have been secured. This would at least have developed the fact of his removal, and steps could have been taken to have his testimony in the form of a deposition, or, if there should not have been sufficient time for that

purpose, an application for continuance on account of the absence of the witness would have been proper.

II.   There was evidence tending to prove that before the contract was signed by the plaintiffs they applied to the Internal Improvement Committee and asked them to go and show the excavation to be made; that the committee sent the city engineer with one of plaintiffs upon the street, and that the engineer then pointed out where the established grade was, and how deep the excavation would be required at certain points, giving the depth in feet and inches; that after the contract was signed the engineer set stakes to correspond with what he had stated to one of plaintiffs; that afterwards the engineer took up the stakes and set them so as to require the excavation to be made deeper; that nearly all the rock and hard material were below the points first indicated by the engineer and below the points indicated by the stakes first set.   The evidence also tended to show that it was reasonably worth one dollar per yard to remove the rock and other hard material.   The defendant objected to all the evidence as to what was stated by the engineer in regard to the depth of the excavation.   The objection was overruled.

*2.  CONTRACT: evidence.*

We think there was no error in this ruling.   It is urged by counsel for appellant that the plaintiffs were bound by the written contract to bring the street to the established grade provided by ordinance, whatever rock or hard material there may have been to remove, and that any statement or representation of the engineer would not affect or vary the written contract.   The ordinance establishing the grade was not introduced in evidence.   Whether an examination of it by plaintiffs would have indicated to them the depth of the excavation we have no means of determining.   It is more than likely that such examination would impart no accurate information in that respect, unless aided by the services of an engineer.   The plaintiffs introduced in evidence certain city ordinances providing in substance that it was the duty of the city engineer to superintend the grading, curbing, etc., and all other works of a public nature relative to streets and bridges within the city; that he should make all surveys of the streets of the

city and execute plans and statements of the same; that he should keep a record of such surveys and grades in a book to be furnished by the city, and that when any improvement should be ordered and directed the same should be done under the supervision of the city engineer and internal improvement committee. We have no doubt, under all these circumstances, that the representation made by the city engineer as to the required depth of the excavation was competent evidence. Surveying streets, establishing grade-lines, making measurements of excavations ordered to be made, were acts in the direct line of his official duty. He was the proper officer to point out the depth of excavation to be made and his act in that respect is the act of the defendant.

III. The instructions asked by defendant were based upon 3. ——: quantum meruit: municipal corporations. the idea that the parties were bound by the written contract, and that the evidence as to the representations of the engineer was incompetent. These instructions the court refused, and on its own motion instructed the jury as follows:

"The contract for grading High Street was in writing and is before you, and you are to be governed by its terms and provisions so far as the work was done under it, and the price to be paid therefor. The material question raised in relation to said contract is how deep was the cut or excavation to be made in said street under said contract. In the absence of evidence on the subject you will find the grade to be just where it was in fact established by the city, no matter how deep the cut should be or how much of a fill there should be, and such grade should be determined by the ordinance of the city, the rule of law being that in written contracts parol evidence shall not be allowed to change the terms or meaning, or to contradict, enlarge or diminish its terms by showing what was said or intended at the time of making the same.

"2. But this rule has some exceptions or qualifications. One is that where parties have contracted with reference to a certain state of facts within the knowledge of one party, upon which the other entirely relied, and the one having the knowledge stated such facts to be true, and you find the same mate-

rial, then and in such case the party so stating such material facts shall be bound by them, and shall be estopped, from denying the truth of such statements, and this rule would apply in all cases where the representations are made by agents and officers of corporations, when made by authority of the principal in the line of duty.

" 3. And in this case if you find that the plaintiffs, when bidding for the work on High Street, and before or when contracting for the same, applied to the internal improvement committee and the city engineer, who were in charge of the work, to know where the grade line of High Street was, and the committee directed the engineer to show and give the same, and if it was his duty to do so and he did so and fixed the stakes upon the ground to show the same, at or about the time the contract was made, and you find the contract was made with direct reference to the line of grade so given, and the defendant and said committee and engineer so knew and understood the plaintiffs were relying upon and contracting in reference to the grade so given, then for the purposes of this case you will consider and construe this contract as fixing such line as the true grade.

" 4. And if you find there was work and labor done below said grade line, so represented and staked by the engineer, and such was done with the knowledge of the city and the officers in charge, and such was beneficial to the city, then the plaintiffs will be entitled to such compensation for the same as like work under the contract, if any, and if not, then what the same was reasonably worth under the evidence before you."

It was undoubtedly the plaintiffs' right to rely upon the representations made by the engineer as to the depth of the excavation, and if upon completion of the work to the depth indicated by the stakes which were standing at the time the contract was made they had abandoned the further prosecution of the work, they would not have been liable in damages for a failure to comply with the written contract.

This would be true, conceding that the engineer was innocently mistaken in the representation as to the depth of the excavation to be made.

".When one in honest error asserts that which is not true, and does so for the purpose of influencing another, who in good faith trusts to and acts upon it, he that made the mistake shall not correct it for his own benefit, and to the injury of the party who was deceived by his assertion." 2 Parsons on Contracts, 800, and cases cited in notes; *Smith v. Cramer et al.*, 39 Iowa, 413.

It is equally true that if the plaintiffs, after the original stakes were taken up and replaced, and they were directed to excavate to the depth indicated by the stakes last set, proceeded with the work without objection, they would be concluded from making any claim in excess of seventeen cents per cubic yard, that being the contract price.

But the evidence shows that the plaintiffs presented a petition to the city council setting forth the development of obstructions in excavating High Street, that were not and could not have been known at the time the contract was entered into, and that the obstructions were of such a nature as to cause the plaintiffs to be greatly losers; and praying the council to take such action and make such examination of the facts as justice and equity required. No action was taken by the council upon this petition. Two witnesses, who were members of the city council, testified that the plaintiffs did not complete the excavation to the established grade; that the city made no new contract with the plaintiffs, but released them from completing the work, because it was a losing job for the plaintiffs.

This being the evidence before the jury we do not think the instructions of the court were erroneous.

If the plaintiffs, because of the mistake of the engineer, had the right to stop the work at the depth indicated by the stakes as first set; and recover the contract price of seventeen cents per cubic yard for the work done; and were under no legal obligation to proceed further; and they notified the council by their petition of the development of the obstructions, and requested that some action be taken in the premises, we do not think they should be held as proceeding with the work under the contract; but that the removal of the hard material in

question was rather in the nature of extra work, which the contract did not contemplate and which the city had no right to require the plaintiffs to do, and for which the plaintiffs were entitled to a reasonable compensation.

There is nothing in the instructions of the court, or in the refusal to give the instructions asked by defendant, inconsistent with the rule here announced.

AFFIRMED.