## SEE BEN REALTY CO. v. GOTHBERG ET AL.

(No. 2168; January 21, 1941; 109 Pac. (2d) 455)

For the plaintiff in error, there were briefs by *E. E.*

*Enterline* and *Madge Enterline* of Casper, and oral argument by *E. E. Enterline*.

For the defendants in error, there was a brief by *R. R. Rose* and *H. B. Durham* of Casper, and oral argument by *Mr. Rose*.

BLUME, Justice.

This is an action brought by the plaintiff, See Ben Realty Company, a Corporation, against M. J. Gothberg and others to quiet the title to certain property in dispute, claimed by plaintiff to be part of the NW/4SW/4 of Section 5, T. 32 N., Range 79 West of the 6th P. M., except certain tracts already heretofore sold. The trial court found in favor of defendants, and plaintiff has brought this case here by petition in error. The parties will be referred to as in the court below.

One Montgomery received patent for the NW/4SW/4 here involved, and the plaintiff is his successor in interest. The Hawks and McNelly tracts, marked on the map, were patented to these parties respectively. The defendants are their successors in interest. The land in dispute contains 12.8 acres. The following map explains the situation in controversy herein.

The plaintiff claims that the shaded portion shown on the map is part of the forty acre tract above mentioned; that the north line thereof is the line marked "new line"; and that the west boundary thereof is the line marked "new line." The defendants claim that the lines marked "old line" are the true lines of the respective forty acre tracts, according to the survey of the United States Government made in 1883, duly approved by the Land Office; that the stone marked "C. C. stone" is the northwest corner of Section 5 and the northeast corner of Section 6, called the closing corner, and is located on the 8th Standard parallel, as fixed at the time of the survey; that a quarter corner between sections 5 and 6 was, in connection with that survey, placed where marked on the accompanying map, though now lost. Apparently a considerable amount of dispute existed as to the boundaries in the township in question, so in 1922 the Federal Government made a new survey, which, it is claimed, was, in the main, a retracement of the lines of the survey of 1883. The new boundary lines, marked on the accompanying map, were the lines located under the new survey, and plaintiff claims that these are the true lines. Under this survey the north closing corner between sections 5 and 6—that is to say, the northwest corner of Section 5 and the northeast corner of Section 6—is located 218.01 feet north of the old closing corner, and is claimed to be located on the true eighth standard parallel (called the new 8th standard parallel on the accompanying map); the quarter corner between the two sections is located, under this resurvey, about 200 feet northwest of what is called the old quarter corner. No claim to the land in dispute was made by plaintiff prior to the resurvey in 1922. On the contrary, part of the north portion of the land shaded on the map had been laid out as a park, called Gothmore Park, divided into lots as part of the SW/4NW/4 of Section 5 and

SE/4NE/4 of Section 6, and had been sold by Mr. Scherk, manager and principal stockholder of the plaintiff company, as agent for Gothberg and Blackmore. These lots had as their south boundary the line marked "old line" running east and west and the extension thereof. Plaintiff lays no claim to these lots.

The contention of the defendants is supported by the testimony of the witness Wheeler, a civil engineer since 1910. The substance of his testimony is: He assisted one Kingdon, a civil engineer, in surveying the line between Sections 5 and 6, the sections here in question. They started at the closing corner above mentioned, on the so-called old line of the eighth parallel, and worked southward. That is the only closing line found in that neighborhood. Approximately half a mile to the south, they found a quarter corner between the two sections, located a little to the east and about 100-125 feet south of a cabin on the McNelly tract, as marked, approximately, on the accompanying map. The cabin still stood in 1919, has since disappeared, but its location can still be determined by some wreckage evidencing its site. The government field notes were used in connection with the survey. The witness made another survey in 1919, for the laying out of Gothmore Park. He was assisted by Worthington, Kennedy, and others. This survey is called the Wheeler-Worthington survey. It was harmonized with surveys made by the witness during the preceding ten years. The whole north line of the township in question, the entire south line of the township, part of the western boundary thereof, and part of the township to the east had been surveyed, so that the Wheeler-Worthington survey was really based on a survey involving approximately 200 miles. The survey of 1919 was started at the closing corner on the so-called old line of the 8th standard parallel, working south. The monument proper of the quarter corner found in 1907

had been removed, but evidences of the location were found. The closing corner above mentioned is, according to the witness, the true north corner between Sections 5 and 6, and is properly marked. It is, so the witness testified, located on the 8th standard parallel as determined in 1882, but that standard line has been changed several times since it was first located; it was attempted to be changed in 1900 by Owen, but his work was never approved. A new line for the parallel was adopted shortly before 1919—according to Mr. Atherly, in 1915 by Mr. Clark.

The contention of the defendants is also sustained by the testimony of Mr. Gothberg, one of the defendants, who had lived in the neighborhood since about 1883, and who testified that he saw the so-called closing corner a number of times, the first time about 1900. While not a surveyor, he had helped in surveying and had done some surveying himself. As to the so-called closing corner on the north of sections 5 and 6, and dividing these sections, he stated that "there is one set of stones to the north and one to the south. There are two groups of stones. One indicates the north township and one indicates the south township. * * * The eighth standard parallel runs along these lines * * * It (the monument) has got five marks on the east, one on the west and six on the south, and marked with a "C.C." The witness further stated that he caused Mr. Kennedy to make a survey of the land for the purpose of this suit; that this was done soon after the so-called new survey had been made by the Government; that they started at the so-called closing corner between sections 5 and 6, worked southward; came to the place where the quarter corner had been located by the Wheeler-Worthington survey, reestablished that corner "and we continued south to the end of our line, another forty, and in that course further south, an eighth of a mile, the line ran between

witness trees (marked on accompanying map) blazed on each side of the line about eight feet high that was visible"—found marked on the field notes of the United States Government, which were used by them. There is no dispute in the evidence that the closing corner above mentioned, though somewhat mutilated, is still at the place mentioned by Wheeler and Gothberg.

The chief witness for the plaintiff was Albert Park, a civil engineer. He made a survey of the NW/4SW/4 for the plaintiff for the purpose of this litigation, and made a map of the survey which was introduced in evidence. His survey was based, as he testified, upon the resurvey made by the Government in 1922. He stated that the Wheeler-Worthington survey is incorrect. He based that on the fact that that survey wrongly started with the so-called closing corner above mentioned, for the reason that it is not located on the actual 8th standard parallel, which is 218.01 feet north of the corner mentioned; that while that corner marks the line north and south between sections 5 and 6, it does not mark the north boundary line of the township, as evidenced by Rule 378 of the Manual of Instructions of the Department of the Interior, hereinafter set out. The defendant also introduced in evidence a letter from Clyde W. Atherly, U. S. Surveyor General, which condemns the Wheeler-Worthington survey, for the reason that the start thereof was at the so-called closing corner, which is not located on the eighth standard parallel, and which does not mark the north line of the township, as evidenced by Rule 378 above mentioned. It does not appear when that rule was adopted. The letter of Mr. Atherly was approved by a letter from an acting assistant commissioner of the general land office, also introduced in evidence. Defendant further introduced in evidence an affidavit made on March 9th, 1925, by Mathew Montgomery, predecessor in interest of plaintiff, to the effect that the corners located by the

resurvey of 1922 are in the same place as the corners of the original survey. However, affiant made an affidavit in 1904, at the time when Jane McNelly made final proof on her land, and he then stated that the land was improved by the erection of a cabin on the land. So far as the record shows, there was but one cabin erected thereon, and the location thereof directly contradicts the statements of Montgomery made in 1925.

■ The greatest point of dispute herein is in connection with the 8th standard parallel and matters incidental thereto. Townships are presumably located according to guide meridians, or range lines, which extend north and south at intervals of 24 miles east and west, and standard parallels, which run east and west, and ordinarily at intervals of 24 miles north and south. Manual of Instructions, Department of the Interior, Sections 144-146. Under the evidence herein, the 8th standard parallel presumably runs east and west along the north line of the township in question herein. But the actual location thereof, as well as the effect of such actual location, is in dispute. Plaintiff claims that it is located 218-01 feet north of the so-called closing corner in question here, and that it absolutely controls the northern boundary of the township, moving the northern line of the land owned by plaintiff 218.01 feet further north from the line claimed by the defendants. Even if that were so, it would not fix the west boundary of the land. The witness Albert Park did not establish that line. He merely followed the lines of the new survey in 1922. He calls it a retracement, or dependent survey. No independent testimony of the correctness of the resurvey—that is to say, whether or not it merely retraced the lines of the original survey—was introduced. The resurvey was made by Mr. Riley. If we understand the letter of Mr. Atherly correctly, Riley ignored the closing corner

here in question as constituting a real closing corner between sections 5 and 6. He also ignored in a similar manner the "original closing corner" situated at the northeast corner of the township in question, and which is apparently on the same latitudinal line as the closing corner between sections 5 and 6. He ran a line "through" these closing corners to the 8th standard parellel "in agreement with the survey record," which we presume is the latest survey of that standard line made in 1915. No independent testimony was introduced that this was correctly done, unless we consider the letter of Mr. Atherly of that character. In United States v. State Investment Co., 264 U. S. 206, 68 L. Ed. 639, 44 Sup. Ct. 289, it was apparently held that a subsequent survey is not admissible in evidence to show boundary lines of a survey made in 1860. See also Liddon v. Hodnett, 22 Fla. 442. In Dancer v. Meyers, 103 Nebr. 856, 174 N. W. 845, it was held that a resurvey made by the proper officers of the United States Government is some evidence of the proper location of corners, though not conclusive. However, in that case there was additional testimony showing the actual location of the corners. If, under the holding of Dancer v. Meyers, supra, the resurvey in this case, called a retracement by the witness Park, furnishes some evidence of the true location of the boundaries in question, it cannot in any event be considered conclusive, in the presence of testimony showing the contrary. If we credit the testimony of the witnesses Wheeler and Gothberg—and we see no reason why we should not do so—there is scarcely any doubt that the surveyors who made the original survey in 1883 meant to locate the closing corner on the north line of the township. That appears not only from Wheeler's testimony relating to this corner, but also from the location of the quarter corner, which he found approximately half a mile south, and from the testimony of Gothberg

to the effect that blazed trees were found south of the quarter corner to locate the line north and south between the two sections. Furthermore, Gothberg testified that the closing corner had five marks on the east, one on the west and six on the south. These markings accord with the requirements of section 288 of the Manual of Instruction above mentioned. They mean that the corner was one mile from the western, five miles from the eastern, and six miles from the southern boundary of the township. Surveyors work from the south northward, so that it is clear that the closing corner—being six miles north from the township to the south—was meant to be on the north line of the township. And in view of the fact that, according to the testimony in the case, the north line of the township should, at least theoretically, correspond with the 8th standard parallel, it follows that the surveyors of 1883 also meant to tie the corner to, and locate it on, that parallel. In other words, the surveyors of 1883 considered the 8th standard parallel to be 218.01 feet south of where it was located in 1915 by Mr. Clark. Now, if we assume that the survey of Mr. Clark is correct and that the surveyors of 1883 made a mistake in regard to the 8th standard parallel, what is the effect?

Counsel for plaintiff contend that the closing corner here in question is no section corner at all. That, too, was the contention of the witness Albert Park, and is the contention in the letter of Mr. Atherly, who states that this corner is presumed to close on the standard parallel and "is seriously misplaced." Reliance is placed on Rule 378 of the foregoing Manual of Instruction. The section deals with the re-establishment of a lost closing corner on a standard parallel or other controlling boundary, and after providing what shall be done in such case proceeds to state:

"An identified closing corner not actually located in

the line closed upon, will determine the direction of the closing line, but not its legal terminus; the latter is bound to fall at the true point of intersection of the two lines."

This rule raises one of the main points which throw whatever doubt there may be in the case as to the correctness of the judgment of the trial court. We have not found any case in which the rule has been discussed. The contention is that in view of the fact that it does not tie in with the true line of the 8th standard parallel, it merely marks the line north and south and nothing more; in other words, in effect, that surveyors of the Government, when making the original survey, must at their peril tie such corner to the true line of the standard parallel, or its location on the ground virtually amounts to nothing. But is that reasonable? Suppose that all the section corners of section 5 as well as the quarter corners thereon were still in existence, showing the boundaries thereof to be those now claimed by the defendants, but that the north line thereof would be found not to correspond with the true line of the 8th standard parallel, would it still be contended that all these corners should now be ignored, and the section and its subdivisions be moved north 218.01 feet? The evidence of the witness Wheeler shows clearly that surveyors may make a mistake in locating a standard parallel, the same as in surveying anything else, and we do not doubt that to be true. The standard parallel in this case apparently was first surveyed and located in 1882. A surveyor by the name of Owen resurveyed it, and located it in some other line, but that survey was not approved. The letter of Mr. Atherly shows that it was surveyed again for the Government by Mr. Clark in 1915. The Clark survey has evidently been approved by the United States Government, and the re-survey of 1922 was made in accordance therewith. But which of these surveyors was right? Sup-

pose some other surveyor representing the Government hereafter finds that Mr. Clark was wrong, what would be the result in that case? These considerations lead us to believe that while the rule would doubtless apply in cases in which none of the lands affected have passed into private ownership, it cannot apply in a case such as is before us. Section 772, 43 U. S. C. A., permits resurveys and retracements of the old survey, but also provides that "provided that no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement." The evidence indicates that the lands of the defendants were located and patented according to the survey of 1883, and particularly the closing corner here in question, and the foregoing rule, if intended to be applicable to a case such as is before us, would be inconsistent with the statute just quoted. It is a general rule that the original corners as established by the government surveyors, if they can be found, or the places where they were originally established, if that can be definitely determined, are conclusive on all persons owning or claiming to hold with reference to such survey and the monuments placed by the original surveyor without regard to whether they were correctly located or not. 9 C. J. 164, 175, 176; 50 C. J. 912-914; 8 Am| Jur. 788, 819; Henrie v. Hyer, 92 Utah, 530, 70 P. (2d) 154. See also Bentley v. Jenne, 33 Wyo. 1, 236 Pac. 509; Porter v. Carstensen, 40 Wyo. 156, 274 Pac. 1072. The United States Supreme Court stated the rule succinctly in United States v. State Investment Co., supra, thus:

"Although the power to correct surveys of the public land belongs to the political department of the Government and the Land Department has jurisdiction to decide as to such matters while the land is subject to its supervision and before it takes final action * * * this power of supervision and correction by the De-

partment is 'subject to the necessary and decided limitation' that when it has once made and approved a governmental survey of public lands and has disposed of them, the courts may protect the private rights acquired against interference by corrective surveys subsequently made by the Department * * *. A resurvey by the United States after the issuance of a patent does not affect the rights of the patentee; the government after conveyance of the lands, having no 'jurisdiction to intermeddle with them in form of a second survey.' * * * And although the United States, so long as it has conveyed its land, may survey and resurvey what it owns, and establish and re-establish boundaries, what it thus does is 'for its own information,' and 'cannot affect the rights of owners on the other side of the line already existing.' "

In Washington Rock Co. v. Young, 29 Utah 108, 80 Pac. 382, it was held that where an original government survey of land was made before the township line was established, the fact that a retracing of such survey placed the corner of a section east of the township line as subsequently established, and in another township, could not injuriously affect the rights of a party holding under a government patent based on the original survey, and that the original survey is controlling. In Harrington v. Boehmer, 134 Cal. 196, 66 Pac. 214, 489, it is stated that "a government township lies just where the government surveyor lines it out on the face of the earth." In Galt v. Willingham, 11 F. (2d) 757, the court stated: "The only thing on which appellants reasonably can rely is the failure of the government surveyor to run his range line due north and south. But in re-establishing the lines of the survey the footsteps of the original surveyor should be followed, and it is immaterial that the lines actually run by him are not correct." If that is true of a range line, it must be equally true of the lines of a standard parallel. The only distinctive feature in this case is that it is sought, under the provisions of rule 378

supra, to deprive a true government corner, which is the only one in that particular place, or in the neighborhood thereof, which marked the north boundary of the township and the closing corner of two sections, of the character as such corner. We find no justification therefor under the decisions, which are uniform to the effect that government corners mark the true boundaries. The trial court in Galt v. Williams, 300 Fed. 761, said: "Granted that the rules governing surveyors of government land are required to run range lines due north and south, yet if the surveyor does not do this, as I understand the law, when it comes' to re-establishing the lines, they are to be run as the surveyor ran them at the time of making his survey, and not what he ought to have done. And so strict is this rule that not even the government can change the lines to the detriment of private interests." So in this case, granted that the surveyors of 1883 should have established the closing corner here in question 218.01 feet north of where they did, yet since they did not do so, the rights of the patentees here in question and those of their successors in interest cannot be prejudiced thereby.

The map of the original survey in 1883 and the map of the new survey in 1922 were introduced in evidence. The witness Albert Park testified that he compared the acreage of each tract of 40 acres in section 5 with the acreage shown in such tracts under the new survey, and that the comparable acreages agreed, except only by a difference of less than one third of an acre for each tract of forty acres. Counsel for plaintiff seem to lay a great deal of stress on this testimony. We are unable to see that it has any evidential value. The acreage might be the same, but the boundaries differ, and that is the contention of the defendants.

■ Counsel for plaintiff argue that the testimony shows that plaintiff has been and is in possession of

the land actually in dispute herein, and that this is prima facie evidence of title. That is true. Bentley v. Jenne, 33 Wyo. 1, 236 Pac. 509. But such possessory title is, of course, not good as against one who can show a better title. Durrel v. Abbott, 6 Wyo. 265; Pregal v. Stickney, 34 Wyo. 324, 243 Pac. 392. On that point counsel for plaintiff state: "Neither did the defendants, as far as the record discloses, establish or prove by the evidence a connected record title. There is evidence in the record that Mrs. Butler conveyed to defendants the McNelly and Hawks tracts, but there is no evidence in the record of how or in what manner Hawks acquired title." Taking the statement as a whole, the objection seems to be that the record fails to show "in what manner Hawks acquired title." Perhaps counsel for the defendants should have been more careful in connection with that point. The evidence as to how Hawks acquired title is weak. However, the map of the resurvey of 1922, introduced in evidence by the plaintiff, indicates that Hawks acquired the land through patent. The dispute between the parties turned on the point as to the boundaries of the respective lands. That seems to have been the only dispute. We could not, under the circumstances disclosed by the record, reverse the case because of the weakness of the evidence on the point above indicated. We think that the trial court was warranted in finding that the defendants showed a better title.

■ The plaintiff, in rebuttal, offered the testimony given by Albert B. Bartlett in a former trial of the case, which appears to have been about ten years previously. Bartlett is a civil engineer, and the record shows that he resides in Platte County, Wyoming. His former testimony was offered particularly to corroborate the witness Albert Park, and to show that the Wheeler-Worthington survey is incorrect. It was first admitted but finally excluded by the court. It relates

particularly to the 8th standard parallel, and contains nothing as to the quarter corner between sections 5 and 6 mentioned herein. It may, accordingly, be, as contended by counsel for the defendants, that the action of the court was without prejudice. However, the contention of counsel for the plaintiff is of sufficient importance that, perhaps, the court should pass upon it. Reliance is placed on Section 89-1713, Rev. St. 1931, which provides that "a witness shall not be compelled to go out of the county where he resides or may be subpoenaed, to testify on the trial of a civil action or to give his deposition," and upon section 31-241, Rev. St. 1931, which provides that "such reporter (of the court) shall not have a seal, but all transcripts of evidence and proceedings written out by him or her, and certified by him or her as the official reporter of the court for which he or she is acting, shall, when there is attached thereto a certificate of the clerk of the court, that such person is the official reporter thereof, be received as the prima facie evidence of the facts, testimony and proceedings set forth in such transcript." Attached to the testimony so offered is the certificate of H. A. McCracken, the official reporter, that the testimony transcribed by him is correct and is the testimony of the witness. And there is also a certificate of the clerk of court of Natrona County that the reporter is and since 1925 has been the official reporter of the court, as the statute requires.

Counsel for plaintiff seems to think that the fact that a transcript of the testimony may be "received as the prima facie evidence of * * * the testimony" etc., of the witness, required the court to admit it in evidence in this case, since the witness was not required to leave his county, and hence was beyond the jurisdiction of the court, in a civil case. But the statute is not as far reaching as counsel seem to think. The transcript is prima facie evidence of what the witness

testified to in the former trial, but the statute does not provide that it may be admitted in a subsequent trial of the case. That, obviously, is an altogether different question. There can be no doubt that ordinarily at least it is much more satisfactory in the administration of justice that witnesses should give their testimony in the trial of the case then before the court, and hence former testimony is regarded in the light of secondary testimony. It is admitted only as a matter of necessity. 22 C. J. 427. Some of the cases require that, though the witnesses are beyond the jurisdiction of the court, an effort should be made to induce them to come within such jurisdiction voluntarily. Levi v. State, 182 Ind. 188, 104 N. E. 765, 105 N. E. 898; Slusser Taylor & Co. v. Burlington, 47 Iowa 300. The rule in Massachusetts is that such former testimony will not be received unless the witness cannot be induced to come within the jurisdiction or to a place where his deposition may be taken. A. T. Stearns Lumber Co. v. Howlett, 239 Mass. 59, 131 N. E. 217; Ibanez v. Winston, 222 Mass. 129, 109 N. E. 814. That an effort must be made to take deposition is held by the courts of quite a number of states. 22 C. J. 432, 433, 435 and cases cited; Herndon v. Chamberlain, 39 Ga. App. 207, 146 S. E. 503; United Tel. Co. v. Barva, 83 Ind. App. 61, 147 S. E. 716; Wallace v. Lackey, 199 Ky. 190, 250 S. W. 843; Southern Ry. Co. v. Owen, 164 Ky. 571, 176 S. W. 25; Director General v. Gordon, 134 Va. 381, 144 S. E. 668; Brownlie v. Brownlie, 351 Ill. 72, 183 N. E. 613; Slusser, Taylor & Co. v. Burlington, supra; Jones, Ev. (2nd ed.) Sec. 1187, 1188. The subject is discussed in Wigmore on Evidence (3rd ed.) Sec. 1404. The author states in subdivision (b) that "it is sometimes said that an effort should have been made (where the witness is outside of the jurisdiction of the court) to persuade the witness' voluntary attendance, and no doubt the trial court's discre-

tion might occasionally make such requirement; but it is unnecessary to prescribe this as a general rule." In the next subdivision the author states that "it has also been suggested that an effort should have been made to obtain the witness' deposition by commission; but this is futile, for a deposition is no better than his former testimony." We need not now determine as to whether or not this should be accepted as a rule in some or most of the cases. We cannot, however, agree with the distinguished author that the statement should be accepted as the rule in all cases. In the case at bar the former testimony was given ten years previously. It would be somewhat hazardous to say, in view of the advancing sciences, that the testimony of, for instance, a physician, a chemist, an electrician would in no way be modified by an additional experience of the period of ten years. That would probably not be true to the same extent in the case of civil engineers who testify in regard to surveys on public land, but that it might be true at least to some extent is not beyond the range of possibility or even probability, if we may take the dispute between Albert Park and Marion N. Wheeler, two reputable civil engineers, as the criterion. Courts seem to be agreed that whether or not the former testimony should be admitted in case of the absence of a witness from the jurisdiction of the court is largely within the discretion of the trial court. 22 C. J. 432. We think that in view of the fact that in this case the former testimony was ten years old, and it appears that the witness might have been persuaded to come to Casper and testify, or at least that his deposition might have been taken, the court did not abuse its discretion.

■ Counsel for the plaintiff claim that the defendants should have produced Kennedy, who made one of the maps introduced in evidence, as a witness, and that the failure to do so raises a presumption against

them. He was a witness in the former trial. Jones v. Wettlin, 39 Wyo. 331, 336, 271 Pac. 217, is cited. In that case it appears that the testimony of Mrs. Wettlin, explaining the transaction involved in that case, was uncontradicted. The husband of Mrs. Jones might have contradicted it. He was not produced as a witness, and the court held that this raised a presumption against Mrs. Jones. The case cites Studebaker Corporation v. Hanson, 24 Wyo. 222, 157 Pac. 582, where the rule is discussed at considerable length. We do not understand the rule to be that every witness must be introduced by a party who is able to throw light on the matter in dispute. Kennedy helped in a survey made in 1919. The survey was made under the direction of Marion N. Wheeler. Kennedy was but an assistant therein. So far as we are able to tell from the record, the defendants offered the best evidence available to explain the situation from their standpoint—the witness Wheeler. Kennedy was in Montana at the time of the trial. We do not think that under the circumstances of this case the rule of Jones v. Wettlin, supra, applies.

The judgment of the trial court is affirmed.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.