## No. 16,738.

### EVERETT ET AL. *v.* LANTZ.
(252 P. [2d] 103)

Decided November 17, 1952.   Rehearing denied January 5, 1953.

Mr. JOHN M. BOYLE, Mr. ROY A. PAYTON, for plaintiffs in error.

Mr. MAX C. WILSON, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

GEORGE G. EVERETT and Bonnie Vera Everett began an action in the district court of Fremont county on February 1, 1945, against Carl A. Lantz, alleging in their complaint ownership of certain described real estate in said county in which defendant claimed some estate or interest adverse to them. They sought a judgment against defendant enjoining him from asserting any claim whatsoever in and to the lands allegedly owned by them.

In another action in Chaffee county, George G. Everett, on October 17, 1945, brought an action against Minnie Lantz and Carl A. Lantz, alleging his ownership of certain described real estate in said county in which he alleged defendants claim some estate or interest adverse to plaintiff. He sought a judgment against defendants, enjoining them from asserting any claim whatsoever in and to lands allegedly owned by him.

The cases were consolidated for trial, and herein we shall refer to the plaintiff or plaintiffs as plaintiffs and to the defendant or defendants as defendants.

The record discloses that plaintiffs claim ownership of 800 acres in Fremont county and 960 acres in Chaffee county, and defendants claim ownership of 493.52 acres in Fremont county and 577.54 acres in Chaffee county.

The parties hereto owned adjoining lands in different ranges and in different counties. In the complaints the lands are described by governmental subdivisions followed by a metes and bounds description evidently taken from the field notes of a survey approved by the Surveyor General of Colorado on December 6, 1881. Plaintiffs take the position that the courses and distances evidenced by the field notes and the acreage computed therefrom and the delineation of the original 1881 plat, together with possession, entitles them to the relief sought in their complaints.

In each case, in the answer filed, it was denied that the plaintiffs were the owners of any part of the premises described in their complaint which conflicts with the lands owned by defendants which were described in the answer by legal subdivisions. Further, it was admitted that as to the title of the lands in conflict, if any such existed, it was an adverse interest and claim on their part. In each action, for a further defense and counter claim, defendants alleged ownership in the property therein described and prayed that title thereto be confirmed and quieted as against the claim of plaintiffs.

After the causes came at issue, defendants filed their motions for summary judgment, and the court, in denying the motions, stated in part:

"Now, I want to ask you gentlemen to assist the Court in determining the question that I have tried to raise here: As to whether or not, as a matter of fact, under the survey, as it must have existed when the Plaintiffs got their patents, it is in conflict with the land now claimed here by the Defendant in his patent. When we resolve that question we will know what to do. As I have said, if the Plaintiff owned this land, or it was in the boundaries of his claim, then he got it. Of course, if the land that the Defendant now claims was not in this grant to the Plaintiffs, then there is no issue. I can't decide this case until I can decide that point.

"Mr. Boyle: I assume, then, that the Court's notion is that the motion for summary judgment is not good at this time because it would take evidence to determine that fact?

"The Court: I can't decide that now. I am seeking for light in this proposition.

"Mr. Madden: Can we restrict it to that question then in the trial?

"The Court: That is all I think I need to decide this case. I think it will decide itself when that issue is determined."

The court then entered an order, of which the following is a part:

"That the question involved in this hearing is whether or not the lands described in the patents of the Plaintiffs and those of the Defendant are in conflict, and that in order to determine that question the Court deems it necessary to hear evidence in that respect. ·

"Wherefore, it is Ordered that the parties present evidence showing the position of the government corners of the lands in question as established under the Survey of 1881 and also of the dependent resurvey of 1939."

Trial was had to the court on May 11, 1950, and on September 1, 1950 judgments were entered in favor of defendants and against plaintiffs, who are, as we have said, here by writ of error seeking a reversal of the judgments.

Upon trial, after counsel had announced ready, the following colloquy occurred with respect to the issues:

"Mr. Payton: If the Court please, we propose now to introduce evidence by our engineer to show the extent of the conflict existing between the lands of the plaintiff and the lands of the defendants who hold respectively— as to the plaintiff under the survey of 1881 and the defendant under the survey of 1939.

"Mr. Madden: Is that the issue?

"Mr. Payton: It is our contention, of course, that as to the extent of that conflict our right is superior.

"Mr. Madden: We say the issue is simply this: That as to that, that there is no conflict because the government granted Lantz certain lands there, granted him lands, and that the '39 survey is the same as the 1881 survey only it is a retracement of the lines of the 1881 survey. I think the issue should be whether there was a dependent survey—that is, the survey of '39 conflicts with the survey of '81. I think that is the issue. Do you want to agree to that issue?

"Mr. Payton: We can agree with that last part, that

508

there is a conflict, but we don't agree that the survey of '39 was simply a retracement of the survey of 1881.

"Mr. Madden: That is the issue then; as that issue is decided, then the whole case will be decided.

"Mr. Payton: No, we don't say that because, your Honor, if the survey of '39 was made in accordance with the law it would have respected the rights of all freeholders of patents, and they didn't do it. So, we contend that the survey of '39 was not a legal dependent resurvey.

"Mr. Madden: Well, that is the same issue."

The record discloses that a dependent resurvey of Townships 50 and 51 North, Ranges 9 and 10 East of the New Mexico Principal Meridian, was ordered by the General Land Office of the Department of the Interior in 1939, and the returns thereof were approved July 19, 1941. It discloses also that "This resurvey was authorized at the request of the Forest Service in order to identify the boundaries of the *remaining public lands in these townships*. Approximately 40% of the land in T. 51, N., R. 10 E., and about 75% of the land in each of the other three townships are still public lands of the United States." (Italics ours.)

As a result of the dependent resurvey it was found that errors in distances and in cardinal directions had been made in the 1881 survey as disclosed by some of the original 1881 monuments found on the ground in their original location. Using the 1881 monuments as the basis of the dependent resurvey, the lands in Township 51 North, Ranges 9 and 10 East, assumed distorted shapes rather than the precise squares in which the sections and quarter sections were delineated on the 1881 plat, and this occasioned this litigation.

The plaintiffs' only witness, S. F. Elliot, was a registered civil engineer who testified that he had never made a survey of the lands in question but that by superimposing a plat of the dependent resurvey over that of the 1881 survey a composite plat resulted showing the rela-

tive different positions of the sections as established by the dependent resurvey, resulting in a loss to plaintiffs of approximately 200 acres in Township 51 North, Range 10 East, and a very considerable loss of acreage in Township 51 North, Range 9 East. This witness testified that so far as he knew the location of the 1881 monuments had not been disturbed and that the dependent resurvey was correctly executed.

Carter Hutchinson, a licensed engineer, made a survey of defendants' property in Township 51 North, Ranges 9 and 10 East, in 1939, and testified that some of the 1881 monuments found were in their original locations and were sufficient from which to reasonably identify defendants' lands. He further testified that the 1881 plat of Township 51 North, Ranges 9 and 10 East, was wholly inaccurate; that according to his survey, based on the 1881 monuments actually found in their original locations, the lands involved in this litigation were conveyed to defendants by patents to them or their predecessors.

The depositions of Thomas W. Crawford and Arthur W. Brown were in evidence, both of whom were engaged in making the dependent resurvey of Township 51 North, Ranges 9 and 10 East. Both engineers were in 1939, at the time of the dependent resurvey, and for many years prior thereto had been, employed by the Department of Interior, General Land Office and Bureau of Land Management; both were rated as cadastral engineers; and both of them were assigned by the government for work in connection with the resurveys of this particular township. Both deposed that the resurvey work done by them in this township was in strict accord with the governmental regulations pertaining to dependent resurveys and that their resurvey was based solely on the 1881 survey and was controlled by the remaining evidence of the original survey and the original monuments of said survey. Both deposed that the statement appearing on the plat of the dependent resurvey was true, part of which is as follows: "This plat of the resurvey of T. 51

N., R. 10 E., delineates a retracement and reestablishment of the lines of the original survey as shown upon the plat approved Dec. 6, 1881, * * * in their true original position according to the best available evidence of the position of the original corners; all differences between the measurements shown on the original plat and those derived in the retracement have been distributed proportionately between accepted corners in accordance with surveying rules; * * *." Both testified that in making the dependent resurvey of Township 51 North, Range 10 East, they found in place a sufficient number of the original monuments and corners of the 1881 survey to enable them to establish the dependent resurvey and that the same as delineated upon a plat offered and received in evidence, was correct. This plat of the dependent resurvey, as we have said, delineates section lines in an irregular shape rather than cardinal courses and accurate distances. Brown deposed that in making the dependent resurvey in Township 51 he found sufficient of the original monuments and corners of the 1881 survey to definitely identify the lands therein and that the sections therein were irregular in shape and inaccurate in acreage and courses and distances.

Here the 1939 dependent resurvey, according to the evidence of Crawford and Brown, was a retracement of the lines of the 1881 original survey. Brown, in answer to a question requiring a statement of the variation between the original 1881 survey and the resurvey of 1939, as the same pertained to Township 51 North, Range 10 East, stated:

"The S ½ of west boundary of Section 18 has a true bearing of N. 0°01'E., only at variance by 1' of arc from a true north line and from the survey record. The line between sections 15 and 16 has a bearing of N. 28° 34' W., when it should be practically due north. These represent the extremes in direction. In some cases discrepancy in distance is just as bad.

"In my 37 years of cadastral engineering I have come

across only a few other cases as badly distorted as this one. In each case I have endeavored to picture in my mind how the original surveyor could be so wild on so many lines. Sometimes I have been able to construct a reasonable answer. In the present case I have not been able to fully do so and would not like to attempt an explanation here."

Here it is undisputed that the 1939 dependent resurvey was a retracement of the original lines of the 1881 survey by adopting a plan whereby existing evidence of the original survey was given primary control over the positions of all of the boundaries to be reestablished. Identified corners of the original survey were found and re-monumented in their original positions and were sufficient to enable the engineers to establish boundary lines between plaintiffs' and defendants' lands. It is undisputed that patents to the lands claimed by plaintiffs, as well as defendants, were issued according to the original 1881 survey of the lands here in question.

At the conclusion of the evidence the court made findings of fact and conclusions of law, among which is the following:

"That the matters determinative of the issues in these two cases are:

"1. Whether the resurvey of 1939 re-established the boundaries of the 1881 survey, or changed them to the detriment of the plaintiff, and

"2. Whether the proceedings in the General Land Office and the Department of the Interior—which terminated adversely to the plaintiff—are res adjudicata and binding on the plaintiff.

"Referring to the first of these two questions it is conceded that the re-survey was conducted by the Land Office Department under proper authority; and the Department found said survey to be a dependent re-survey of the survey of 1881, and confirmed the defendant's entry.

"The gist of plaintiff's complaint is not that he did not

get the lands described in his patents, but that there is a shortage from the normal and usual amount contained in the governmental subdivisions set out in his patents, to-wit: in the amount of approximately 192 acres in one case and an undisclosed number of acres in the other cause.

"This is also true of the defendant's land, that is, under the re-survey defendant's acreage in Fremont County was shown to be only 493.44 acres, whereas if the governmental subdivisions had been normal and usual he would have been entitled to 606.30 acres. The same is true of the defendant's lands in Chaffee County although the exact acreage is not shown. From this situation we find that the conflict here is not in the overlapping of these two governmental grants but in the fact that there is a shortage of acreage to make up what would otherwise be the usual and normal amounts of land.

"It is further shown that there is not actual conflict from the fact that the grants to the plaintiff and his predecessors and to the defendant are conveyed by entirely different descriptions.

"Having found that there is no real conflict in these grants the action of the plaintiffs must fail, and it is unnecessary to consider the second assignment. However, the defendant having contended in his answer that the plaintiff, having filed his protest to the re-survey in the General Land Office, and upon an adverse ruling took the matter to the Department of the Interior, where the ruling of the Land Office was upheld, the matter became res adjudicata and binding upon the plaintiff. With this decision we are in accord, and it is the opinion of the Court that the plaintiff was obligated to either abide by the decision of the Department or pursue his remedy by appeal from its decision."

The court further found that plaintiffs, having protested the resurvey of Township 51 North, Ranges 9 and 10 East, and having their protest denied, and thereafter this ruling affirmed by the Department of the Interior,

the matter became res judicata and binding upon plaintiffs. Our determination is such that we do not deem it necessary to express an opinion on this question.

Plaintiffs take the position that the United States, having issued its patents to the lands here in controversy, a dependent resurvey thereof which will change the boundaries of the respective patentees' lands cannot be effective and binding upon the patentees, and with this we are in accord. *United States v. State Investment Company,* 264 U. S. 206, 44 Sup. Ct. 289, 68 L. Ed. 639; *Larson v. Larson,* 89 Cal. App. (2d) 846, 202 P. (2d) 121; *Phelps v. Pacific Gas and Electric Co.,* 84 Cal. App. (2d) 243, 190 P. (2d) 209; *See, Ben Realty Co. v. Gothberg,* 56 Wyo. 294, 109 P. (2d) 455; 73 C.J.S., p. 683, §33; 42 Am. Jur., p. 820, §41.

The General Land Office, in its instructions under date of March 25, 1939, authorized a dependent resurvey of Township 51 North, Ranges 9 and 10 East, "in order to identify the boundaries of the remaining public lands in these townships," and did not purport to authorize identification or establishment of the boundaries of lands already patented. Assuming that the General Land Office of the Department of Interior could not by a dependent resurvey settle the disputed boundaries between the plaintiffs and defendants, nevertheless this in nowise detracts from the force and effect of the testimony given by the cadastral engineers who made and superintended the dependent resurvey. The force and effect of their testimony as engineers is to be regarded and received and be given the same weight and credence as any other engineers, and their qualifications are not here questioned. Consequently, the question here for determination is whether the record contains sufficient competent evidence of a survey, and, if so, the identification of the subdivisions of Township 51 North, Ranges 9 and 10 E, must be accepted, for, according to the evidence, it is an exact retracement of the original 1881 survey. If the acreage designated in the patents is

inaccurate, that is a matter of which the patentees therein cannot complain. The undisputed testimony of qualified engineers established the boundary lines here questioned by a location of the original monuments erected in making the 1881 survey, and, as we have said, the fact that this was done in making a dependent resurvey is wholly immaterial. The monuments of the original survey control. "It is a general rule that the original corners as established by the government surveyors, if they can be found, or the places where they were originally established, if that can be definitely determined, are conclusive on all persons owning or claiming to hold with reference to such survey and the monuments placed by the original surveyor without regard to whether they were correctly located or not (citing cases)" See, *Ben Realty Co. v. Gothberg, supra.* See, also: *United States v. State Investment Company, supra; Cordova v. Town of Atrisco,* 53 N.M. 76, 201 P. (2d) 996; *Phelps v. Pacific Gas & Electric Co., supra;* 8 Am. Jur. p. 783, §53; 8 Am. Jur., p. 785, §55; 73 C.J.S., p. 682, §32.

It will be noted that there was a long delay in the trial of these causes in the district court; the judgments were entered on September 1, 1950; the record was lodged here on August 27, 1951; these causes came at issue on April 24, 1952, and orally argued on June 2, 1952. This comment is made in order that the unreasonable delay in this litigation may not be chargeable to this court.

We call attention to the fact that in the record there are more than fifty instances where the witness indicated points on exhibits without any mark whatever thereon to enable us to ascertain therefrom the point to which the witness was directing attention, and in several instances the exhibit about which the witness was testifying was not even identified. This laxity on the part of the trial court and counsel made it impossible for us to give consideration to such evidence.

As we have said, the undisputed testimony of competent engineers is that the 1939 dependent resurvey was

a retracement of the 1881 survey, and, this being so, there was no conflict whatever between the lands granted to the parties hereto by the patents.

Upon the record presented, the trial court was correct in entering its judgments in favor of defendants and against plaintiffs.

The judgments, accordingly, are affirmed.