**UNITED STATES of America, Appellant,**

v.

**John HUDSPETH et al., Appellees.**

**John HUDSPETH et al., Appellants,**

v.

**UNITED STATES of America, Appellee.**

Nos. 20905, 20906.

United States Court of Appeals
Ninth Circuit.

Sept. 11, 1967.

Sidney Lezak, U. S. Atty., Portland, Or., Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, William M. Cohen, Attys., Lands Division, Dept. of Justice, Washington, D. C., for appellant & cross-appellee.

Bodie & Minturn, Prineville, Or. Cake, Jaureguy, Hardy, Buttler & McEwen, Donald W. McEwen, Portland, Or., for appellees & cross-appellants.

Before CHAMBERS, Circuit Judge, MADDEN, Judge of the Court of Claims, and BROWNING, Circuit Judge.

BROWNING, Circuit Judge:

The United States sought damages from the Hudspeths for cutting and removing timber from federally owned lands in Township 11 South, Range 19 East, Willamette Meridian, Oregon. The Hudspeths contended that the lands from which most of the timber was removed were privately owned lands adjoining those owned by the government. Thus the principal issue at trial was the proper location of the boundary between the properties.

The west side of Township 11 was officially surveyed by David Thompson in 1871. The remaining exterior lines of the Township, and its interior lines, were officially surveyed by John S. Kincaid in 1872. In 1958 and 1962, after the alleged trespasses, Floyd A. Brooks resurveyed a portion of the Township on instructions of the Secretary of Interior issued pursuant to 43 U.S.C. § 772 (1964).[1]

The parties agree that the true boundary between their properties is determined by the position of the exterior and interior lines of the Township on the ground as located by the Thompson and Kincaid surveys. They also agree that even if these lines were incorrectly located on the ground by the Thompson and Kincaid surveys, the boundary fixed by reference to them could not be altered by the Brooks' resurvey, conducted after the government had transferred the land. 43 U.S.C. § 772 (second proviso); State of New Mexico v. State of Colorado, 267 U. S. 30, 41, 45 S.Ct. 202, 69 L.Ed. 499 (1925); United States v. State Inv. Co., 264 U.S. 206, 212, 44 S.Ct. 289, 68 L.Ed. 639 (1924); Cragin v. Powell, 128 U.S. 691, 698–699, 9 S.Ct. 203, 32 L.Ed. 566 (1888).

The pretrial order specified two issues of fact to be decided by the court: "1. Did plaintiff accurately resurvey" the lines in question "in accordance with the original surveys?"; and, "2. If issue No. 1 is answered in the affirmative, what volume of timber did defendants cut and remove from lands of the plaintiff?" A single issue of law was stated: "Are defendants bound by plaintiff's resurvey?"

The government's case consisted almost entirely of documents and testimony describing the procedures followed and the conclusions reached by Mr. Brooks. The boundary as located by Mr. Brooks revealed a substantial area of trespass.

In defense, the Hudspeths sought to show that Mr. Brooks had not accurately retraced the Kincaid lines. Their principal contention was that Mr. Brooks based his resurvey upon a number of markers which he mistakenly identified as original corner monuments placed by Mr. Kincaid. They offered evidence that none of these monuments were properly marked, and that none were located where they should have been according to the distances and directions in Mr.

---

1. 43 U.S.C. § 772:
The Secretary of the Interior may, as of March 3, 1909, in his discretion cause to be made, as he may deem wise under the rectangular system on that date provided by law, such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark the boundaries of the public lands remaining undisposed of: *Provided,* That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement * * *

Kincaid's field notes. Their evidence indicated that several of the monuments had been placed by private surveyors long after Mr. Kincaid completed his work.

The Hudspeths contended that in fact Mr. Kincaid had placed few if any interior monuments in the Township.[2] They therefore introduced evidence locating the Kincaid lines on the ground without reference to the interior monuments relied upon by Mr. Brooks. This evidence projected the interior lines of the Township in accordance with the directions and distances in Mr. Kincaid's notes from monuments on the west boundary of the Township which both parties accepted as original monuments placed by Mr. Thompson a year prior to Mr. Kincaid's survey. This reconstruction indicated that Mr. Brooks' resurvey located the Township to the north and west of the ground position fixed by Mr. Kincaid. Locating the boundary in accordance with the Hudspeths' evidence eliminated most of the area of trespass.

■ The district court found: "Defendants, on the facts of this case, are not bound by * * * [the Brooks' resurvey]. Plaintiff has failed to establish by a preponderance of the evidence that defendants trespassed on plaintiff's land, the lines of which were established by the John S. Kincaid survey in 1872. The evidence establishes that such trespasses occurred, but since the plaintiff tried the case on the basis of the alleged dependent

resurveys there was no way that the Court could fix the extent of such trespasses."[3] The court concluded: "Defendants are entitled to a judgment of dismissal, without prejudice, to the right of the plaintiff, to institute an action based on the Kincaid survey."[4]

Based upon phrases culled from remarks of the trial judge and his findings and conclusions, the government argues that the court mistakenly thought Mr. Brooks sought to establish the pertinent lines of the Township anew rather than relocate the Thompson and Kincaid lines, and that the court rejected the line drawn by Mr. Brooks simply because his resurvey came after the alleged trespass in point of time.

■ But it is clear from the record as a whole that the district court fully understood that the boundary was determined by the Thompson and Kincaid lines; that the sole legitimate purpose of the Brooks' resurvey was to relocate and retrace those lines in the alleged trespass area; and that the factual issue which the parties submitted to the court was whether Mr. Brooks had accurately retraced the original lines. It is also clear that the action was dismissed because the court concluded that the government failed to carry its burden of proof on this issue for the reasons suggested in the above outline of the evidence. We are satisfied that the court did not clearly err in weighing the evidence.

2. The survey of the Township postulated by the government would have required Mr. Kincaid to traverse about 119 miles of very rough terrain and place about 120 monuments. Mr. Kincaid completed his work in approximately five days. Yet Mr. Brooks took more than five months to resurvey approximately one third of the Township.
 Although the record is not entirely clear, it appears that eight of thirteen original Thompson monuments were identified on the west boundary; and but only eleven possible Kincaid markers (seven on exterior lines and four on interior corners) out of the 120 which Mr. Kincaid supposedly set were identified even arguably despite repeated searches.

3. The government does not dispute the court's conclusion that the government's proof did not permit a determination of the value of the timber cut on any basis other than the line fixed by the Brooks' resurvey.

4. Although the court's findings and conclusions are general, we think they are sufficient, in the context of the whole record, to reveal the basis for the court's decision and thus permit review. See Graham v. United States, 243 F.2d 919, 923 (9th Cir. 1957). We therefore reject the government's contrary contention.

██ The government advances the argument, in a variety of forms, that the district court should have accorded the Brooks' resurvey a more controlling role than that of mere evidence on a disputed question of fact. None of these contentions appears to have been made below. It is ordinarily inappropriate to reverse upon a ground not submitted to the district court. Chi Sheng Liu v. Holton, 297 F.2d 740, 744 (9th Cir. 1961); First Fed. Sav. & Loan Ass'n of Bremerton v. United States, 295 F.2d 481, 482–483 (9th Cir. 1961). This is true though the appellant be the United States. United States v. Hoth, 207 F.2d 386, 389 (9th Cir. 1953). We see no reason to depart from that principle here.

The first of these contentions is that the Hudspeths were precluded from challenging the results of Brooks' resurvey because they failed to exhaust their administrative remedies. The government points out that the Brooks' resurvey was authorized by the Secretary of Interior pursuant to statute (43 U.S.C. § 772); was conducted by an official surveyor in accordance with official standards appearing in the Manual of Surveying Instructions, Department of Interior, 1947; and was officially approved by the Chief of the Branch of Cadastral Engineering, Bureau of Land Management. They argue that approval of the resurvey constituted an administrative decision which the Hudspeths should have appealed to the Director of the Bureau of Land Management and the Secretary of Interior pursuant to 43 C.F.R. §§ 1842, 1844 (revised as of January 1, 1966), if they felt aggrieved.

Because the contention was not made below, it is not clear from the record that the suggested remedy was applicable to administrative action of this type, or that it was available to the Hudspeths. If it was an applicable and available remedy, the record does not show that the Hudspeths failed to exhaust it. Assuming that they did fail to exhaust it, there was no opportunity for the district court to consider (1) whether Congress intended that such a failure should preclude persons in the Hudspeths' position from asserting in subsequent litigation that the resurvey was in error and deprived them of bona fide rights based on the original survey contrary to the express proviso of 43 U.S.C. § 772;[5] or (2) whether, even assuming an affirmative answer to this question, "the particular circumstances which exist make the case an appropriate one for relaxation of or strict adherence to the rule." Donato v. United States, 302 F.2d 468, 470 (9th Cir. 1962).

██ Similar considerations apply to the government's contention that the district court's review of the Brooks' survey should have been limited to determining whether it was contrary to law, not supported by substantial evidence, or arbitrary or capricious; and to its alternate argument that the judicial function was limited to inquiring whether the Brooks' resurvey was conducted in accordance with the Manual of Surveying Instructions (Dept. of Interior, 1947). As we have said, the government joined the Hudspeths in framing the issue as the simple question of fact, noted again below,[6] to be determined by the court in the usual way. The trial proceeded

5. Compare United States v. McCrillis, 200 F.2d 884, 885 (1st Cir. 1952), and Smith v. United States, 199 F.2d 377, 381–383 (1st Cir. 1952), with Poulos v. State of New Hampshire, 345 U.S. 395, 408–409, 73 S.Ct. 760, 97 L.Ed. 1105 (1953); Yakus v. United States, 321 U.S. 414, 430–431, 443–444, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Falbo v. United States, 320 U.S. 549, 554, 64 S.Ct. 346, 88 L.Ed. 305 (1944); Washington v. Robertson, 227 F.2d 480, 482 (7th Cir. 1955), and United States v. Carter, 197 F.2d 903, 905 (10th Cir. 1952); United States v. Sharp, 188 F.2d 311 (9th Cir. 1951). See generally Jaffe, Judicial Control of Administrative Action 424–58 (1965).

6. "Did plaintiff accurately resurvey Township 11 South, Range 19 East, WM, Oregon in accordance with the original surveys?"

on this basis.[7] The government cannot now fault the trial court for proceeding as both parties requested. And even if we were to assume that either of the government's present views as to the applicable legal standard is correct, we could not know how the record might have differed had the court been asked to apply that standard at trial.

■ Remand for consideration of new issues, rather than dismissal, may be appropriate where dismissal "would obviously result in a plain miscarriage of justice." Hormel v. Helvering, 312 U.S. 552, 558, 61 S.Ct. 719, 722, 85 L.Ed. 1037 (1941). But this is not such a case, for the dismissal was without prejudice to a new trial.

■ The Hudspeths urge that this conditional dismissal was error. They did not object to the form of the judgment in the trial court. But in any event, they admitted that some trespass had occurred, and the public interest in obtaining redress for past destruction of public property, and in fixing the boundary against future trespass, justified the exercise of the court's admitted discretion [Safeway Stores v. Fannan, 308 F. 2d 94, 99 (9th Cir. 1962)] to specify that the dismissal should be without prejudice to a new trial.

The government argues that there is no way to determine the location of the boundary except by a resurvey conducted in accordance with the official Manual of Surveying Instructions; that the Brooks' resurvey was so conducted; and, therefore, that the effect of the trial court's rejection of the Brooks' resurvey is to make a determination of the boundary impossible. However, at another trial the government may be able to offer more convincing evidence that the markers upon which Brooks' resurvey was based are in fact original Kincaid markers; or, if such evidence is not available, the government can retrace the Kincaid line by conducting a resurvey which does not rely upon questionable markers, and can offer the results of that resurvey in evidence.

■ The cases which the government cites for the proposition that it is the duty of a person cutting timber to determine the location of his boundary line [8] hold only that a good faith mistake as to the location of the boundary will not exonerate a trespasser. They afford no authority for shifting the burden of proof which rested upon the government to establish that the timber which the Hudspeths cut was in fact government timber.

Affirmed.

---

7. This appears to be the usual approach. The accuracy of surveys of the public lands of the United States prior to their disposition is a matter committed exclusively to the executive branch. But in disputes with, or between, private owners after disposition by the government "where the lines run by such survey lie on the ground, and whether any particular tract is on one side or the other of the line, are questions of fact always open to inquiry in the courts." Russell v. Maxwell Land-Grant Co., 158 U.S. 253, 259, 15 S.Ct. 827, 830, 39 L.Ed. 971 (1895). See also United States v. State Inv. Co., 264 U.S. 206, 211–212, 44 S.Ct. 289, 68 L.Ed. 639 (1924).
 In State Inv. Co. the Supreme Court seemed to hold that government resurveys subsequent to disposition were not admissible evidence of the location of the original lines. See also Moscrip v. Web-

ster Lumber Co., 163 Minn. 476, 204 N. W. 326, 328 (S.Ct.1925). But the generally accepted rule is that a subsequent resurvey is evidence, although not conclusive evidence, of the location of the original line. See Ben Realty Co. v. Gothberg, 56 Wyo. 294, 109 P.2d 455, 459–460 (S.Ct.1941); Dancer v. Meyers, 103 Neb. 856, 174 N.W. 845, 845–846, (S.Ct.1919). This is also implicit in such cases as Marr v. Shrader, 142 Colo. 106, 349 P.2d 706, 708, 710 (S.Ct.1960); Ward v. Rodriguez, 43 N.M. 191, 88 P.2d 277, 279 (S.Ct. 1939); and Hickman v. Jones, 106 Neb. 466, 183 N.W. 980 (S.Ct.1921).

8. Gordon Creek Tree Farms, Inc. v. Layne, 230 Or. 204, 368 P.2d 737, 741 (1962); Longview Fibre Co. v. Johnson, 193 Or. 385, 238 P.2d 722, 728–729 (1951); United States v. Firchau, 234 Or. 241, 380 P.2d 800 (1963).