**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**LEWISTON LIME COMPANY et al.,**
**Defendants-Appellees.**

No. 25658.

United States Court of Appeals,
Ninth Circuit.

Aug. 23, 1972.

Carl Strass, Atty. (argued), Edmund B. Clark, Atty., Shiro Kashiwa, Asst. Atty. Gen., Washington, D. C., Sherman F. Furey, Jr., U.S. Atty., Jay F. Bates, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellant.

Reed Clements (argued), of Clements & Clements, Lewiston, Idaho, Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for defendants-appellees.

Before MERRILL, BROWNING and ELY, Circuit Judges.

ELY, Circuit Judge:

In 1939, appellee Richardson and a government agent acting on behalf of the Nez Perce Indians made a lease agreement granting Richardson rights to quarry limestone from the Indians' land. The agreement, which was re-

newed on several occasions, provided that Richardson and others operating under his authority (hereinafter collectively called the operators) would pay a royalty in return for the mining rights. The royalty was based upon a percentage of the net proceeds derived from selling the limestone. Specifically, the operators were to pay:

> "10 per cent of the net value of the output of the rock or stone at the mine, which is to be ascertained by deducting from the gross value of the rock or stone the costs of transportation and treatment necessary for the sale of such rock or stone."

For over 17 years the operators paid royalties, without objection to the amounts by the Government. Then, in 1957, the Government claimed that the operators had consistently underpaid by deducting too many expenses in calculating "net value" under the lease. The operators had computed the royalties by deducting all the costs of operation and production from the gross receipts. The Government contended that the costs attributable to mining and marketing the limestone were not deductible. Consequently, it claimed in excess of $60,000 in additional royalties.

The operators protested and refused to pay. The Commissioner of the Bureau of Indian Affairs and his superior, the Secretary of the Interior, both rejected the operators' objection. When the operators continued in their refusal to pay, the Government instituted this action.

Prior to trial, the parties entered into a lengthy stipulation defining their respective positions and stating the issues to be resolved. Only one factual issue was specified. It was:

> "Whether or not the royalty provision set forth in [the challenged] lease is vague and ambiguous, or, if in fact

the terms as utilized therein, particularly the terms 'costs of transportation and treatment,' have a well defined meaning in the mining industry as applied to the limestone operation contemplated and conducted."

The District Court entered judgment in favor of the operators. It held that (1) the royalty provision was, as a matter of both law and fact,[1] vague and ambiguous in respect to the allowable deductions, and (2) the operators had properly deducted their expenses and had paid all royalties due. The Government appeals. We affirm.

The Government advances two arguments for reversal. First, it contends that the District Court was bound by the decisions of the officials of the Department of the Interior interpreting the lease, assuming, of course, that there interpretation was reasonable. In the circumstances here, we cannot agree. The pretrial stipulation clearly set forth the issue on which the parties sought a decision. It contains no mention of the administrative decision. The District Court was asked, by both parties, to decide the factual issue framed in the stipulation. It did so, and "[t]he government cannot now fault the trial court for proceeding as both parties requested." United States v. Hudspeth, 384 F. 2d 683, 688 (9th Cir. 1967). On appeal, the Government, like other litigants, is foreclosed from raising issues which it declined to present at trial. *Id.* at 687. *See also* Helena Rubinstein, Inc. v. Bau, 433 F.2d 1021, 1024 (9th Cir. 1970). There is nothing here that should induce departure from that established rule.

Secondly, the Government argues that whether or not the District Court should have relied upon the administrative interpretation of the lease, it erred in holding that the lease was ambiguous

---

1. The proper interpretation of ambiguous contractual provisions is a mixed question of fact and law. The factual issues include the meaning of terms asserted to have technical, trade meanings. United States v. Continental Oil Co., 364 F.2d 516, 522 (10th Cir. 1966). The question on this appeal is the correctness of the District Court's resolution of such a factual issue.

and vague. Here, too, the Government's position is without merit.

Our review of the record convinces us that the District Court correctly concluded that the lease provision was ambiguous. The language utilized by the Government may have had a definite trade meaning in the context of metalliferous mining operations, but that meaning did not extend to the field of nonmetalliferous quarrying operations, such as those conducted by the operators in this case. Proper interpretation of the contract depended, therefore, upon the intentions of the parties. In reaching its decision, the District Court attempted to determine what the Government and Richardson intended. We have found no flaws in its well-reasoned resolution of that question.

Affirmed.