Dibyendu K. BANERJEE, Plaintiff,
Appellant,

v.

BOARD OF TRUSTEES OF SMITH
COLLEGE et al., Defendants,
Appellees.

No. 80–1475.

United States Court of Appeals,
First Circuit.

Argued Feb. 12, 1981.

Decided April 21, 1981.

Rehearing and Rehearing En Banc Denied
June 26, 1981.

Max D. Stern, Boston, Mass., with whom Stern & Shapiro, Boston, Mass., was on brief, for plaintiff, appellant.

William L. Patton, Boston, Mass., with whom John H. Mason, and Ropes & Gray, Boston, Mass., were on brief, for defendants, appellees.

Jack Greenberg, Charles Stephen Ralston and Gail J. Wright, New York City, on brief for the NAACP Legal Defense and Educational Fund, Inc., amicus curiae.

Leroy D. Clark, Gen. Counsel, Constance L. Dupre, Acting Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, and Joel M. Cohn, Washington, D. C., on brief, for the Equal Employment Opportunity Commission, amicus curiae.

Before COFFIN, Chief Judge, ALDRICH, Circuit Judge, and McNAUGHT *, District Judge.

ALDRICH, Senior Circuit Judge.

This is an appeal by an unsuccessful candidate for professorial tenure, Dibyendu K. Banerjee, a Bengali Indian, whose application was finally rejected by the Committee on Tenure and Promotion (T & P) of Smith College in May, 1974. Banerjee thereafter complained to the Massachusetts Commission Against Discrimination (MCAD) and the Equal Employment Opportunity Commission (EEOC), and in 1976, shortly after receiving a right to sue letter, brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and under the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1] Present defendants are the trustees of the college, and others, in their official capacities. For convenience we will speak of them, collectively, as Smith. The action was voluntarily dismissed against certain persons sued individually. We draw no inference against plaintiff from this. After a nine day bench trial, which included the submission of stipulations and a number of depositions, the court rendered an extensive opinion, 495 F.Supp. 1148: introduction and discussion of legal principles (7 pages); chronology (57 items, from application to final rejection); evaluative findings (3 pages), and subsidiary findings (28 typewritten pages, not published). On the basis thereof it dismissed the complaint.

Adapting *McDonnell Douglas Corp. v. Green*, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, to the case before it, the court held the elements of plaintiff's prima facie case to be the following.

"(1) that plaintiff is a member of a racial or national origin minority;

(2) that plaintiff was a candidate for tenure and was qualified under Smith College standards, practices or customs;

(3) that despite his qualifications plaintiff was rejected; and

(4) that tenure positions in the Department of English at Smith College were open at the time plaintiff was denied tenure, in the sense that others were granted tenure in the department during a period relatively near to the time plaintiff was denied tenure." 495 F.Supp. at 1155.

With respect to the second element, plaintiff's qualifications, the court held that he

* Sitting by designation.

---

1. Concededly, so far as liability is concerned in this case, the rights are identical.

"need only show that he was sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made. That is, he need show only that his qualifications were at least sufficient to place him in the middle group of tenure candidates as to whom both a decision granting tenure and a decision denying tenure could be justified as a reasonable exercise of discretion by the tenure-decision making body." 495 F.Supp. at 1155-56.

*Cf. Powell v. Syracuse University*, 2 Cir., 1978, 580 F.2d 1150, 1155, *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656. ▉ We agree with the court's formulation. We also, of course, agree that establishing a prima facie case would require the defendant to "articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas Corp. v. Green*, ante, 411 U.S. at 802, 93 S.Ct. at 1824; *see Board of Trustees of Keene State College v. Sweeney*, 1978, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216.[2] The burden is then upon plaintiff to show the reason pretextual, and by process of eliminating legitimate reasons, that the decision was governed by an illegitimate one. *Furnco Construction Corp. v. Waters*, 1978, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957.

The court found that plaintiff had made out a prima facie case, but that defendant had articulated a valid reason which it was satisfied was nonpretextual. On appeal both parties, while focusing briefly on the prima facie case, devote most of their energies to the "rebuttal" phase, the articulation of a legitimate reason and the showing of pretext.

Under familiar principles, *e. g., Hilton v. Wyman Gordon Co.*, 1 Cir., 1980, 624 F.2d 379, 383, plaintiff faces the burden of showing the district court's findings to have been erroneous. This he may do either directly or indirectly by showing some underlying error of law. *Sweeney v. Board of Trustees of Keene State College*, 1 Cir., 1979, 604 F.2d 106, 109 n.2, *cert. denied*, 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731. In recognition of this, plaintiff assays three main points.[3] The first is that defendant failed to articulate "a valid, legitimate, non-discriminatory reason."

The district court found,

"The reason articulated [4] by Smith for the denial of tenure was as follows:

Plaintiff was denied tenure because he did not receive the requisite number of votes from members of the Committee on Tenure and Promotion of Smith College. Since the vote of the Committee was a group decision, no single reason or set of reasons can be provided as to why the Committee voted as it did. In general the Committee determined, based on all of the materials that were available to it, that the breadth and depth of the plaintiff's scholarship, considered in conjunction with the quality of his teaching and his service to the college, did not in the Committee's best judgment warrant an award of tenure . . . ." 495 F.Supp. at 1159-60.

After characterizing this, generally, as "stated with considerable ambiguity," plaintiff says that these three sentences in fact constitute three reasons, and that all are invalid. The first, he says, that he did not get the votes, "as meant to supply an explanation" supplied none at all. We do not

---

**2.** Subsequent to the court's opinion, and to oral argument herein, the Court spelled this matter out in more detail. *Texas Department of Community Affairs v. Burdine*, —— U.S. ——, —— n.4, 101 S.Ct. 1089, 1093 n.4, 67 L.Ed.2d 207 (3/4/81) post.

**3.** Point 4, that, alternatively, plaintiff should have received a long-term non-tenure contract, is a claim so out of keeping with the "tenure track" here involved as not to require discussion. There is normally no second prize, and plaintiff did not fit the special cases to which he refers.

**4.** The Court has since spelt out more fully the meaning of "articulate," as requiring "the introduction of admissible evidence . . . legally sufficient to justify a judgment for the defendant." *Texas Department of Community Affairs v. Burdine*, ante n.2. In the present case Smith's reason was supplied by an answer to an interrogatory which the record shows was accepted by plaintiff. If, strictly, it was not "introduced," any deficiency was repaired by Smith's subsequent testimony in connection with plaintiff's response.

consider this sentence as "meant to supply an explanation"; it merely, as the court itself said, *id.* at 1160, stated the procedure. As to the second, plaintiff asks, since not all of the T & P members who were against him gave the same reason, "which does Smith stand behind?" "Smith is *required* to give a justification," (Emphasis in orig.) and since Smith, as an entity, cannot "artic- ulate its own justification . . . plaintiff should win his case." Plaintiff would take the third sentence as subject to two interpretations. (a) The committee believed plaintiff's scholarship did not meet Smith's minimum standards, but was wrong. We need not pursue what plaintiff claims should follow from this; one cannot interpret a sentence by excising part of it. (b) The committee felt plaintiff's scholarship lacked distinction. Again, plaintiff takes only part of the sentence.

■ If a criticism is to be made of Smith's assertion of its reason, it would be that the alleged ambiguity resulted in inadequate specificity. As *Burdine* points out, *see also, Loeb v. Textron, Inc.,* 1 Cir., 1979, 600 F.2d 1003, 1011–12 n.5, articulation is required to enable the plaintiff to know what to meet in order to prove pretext—the best way of proving a bad reason being to show the incorrectness of the claimed good one. It is understandable, however, that the clarity of articulation of reasons for refusing tenure by such collegial decision-making apparatus as that involved here may differ from that given by a business employer. But if Smith's answer to the interrogatory was

inadequate, we are satisfied that the evidence introduced at the trial more than met the requirements.[5] We do not accept plaintiff's contention, ante, that all members of the committee had to agree on their reasoning. It cannot be that all members must agree on a single reason, except in an ultimate conclusion; the requirement is that they should not reach this by improper ones.

Plaintiff's second point is that he proved defendant's reason pretextual "as a matter of law,"[6] but the district court "failed to appreciate" this because it "held a fundamentally erroneous view of the legal significance [*i. e.,* effect] of the prima facie case." The district court gave the matter extensive analysis, concluding, as to the consequences, that probative weight must continually be given to the evidence or inferences which established the prima facie case, but that it has no special magic, once defendants introduce evidence in rebuttal. Plaintiff in no way demonstrates this to be an incorrect legal conclusion, or even argues it, except to quote a sentence from one of our previous opinions which, in fact, accords with the district court's conclusion.[7] Instead, plaintiff proceeds to argue at length that the court made mistakes of fact. Had these alleged mistakes been due in part to the application of a legally erroneous understanding of the "prima facie case," plaintiff's complaint would have force. It is quite clear, however, that they were not; there is no basis for plaintiff's claim that the court made an error of law.[8]

---

5. There was introduced the minutes of some twelve meetings of the T and P committee over a period exceeding two years, and the testimony of five of its seven members, together with that of its chairman, Smith's president. The T and P members not only read, to a substantial degree, plaintiff's dissertation, articles, poems, and outside evaluation, but met on more than one occasion with the members of the English Department. From all of this it is sufficiently clear that at least a large majority most of the time and, at the time of final vote on May 29, 1974, all of the T and P committee were of the opinion that all applicants for tenure should be judged by higher standards of excellence than mere competency, that plaintiff's strength lay in teaching, but whether or not his performance in teaching could be said to be exceptional, the overall quality of his scholarship (vari-

ously criticized for substance, lack of originality, and writing style) and "colleagueship" were not.

6. For the benefit of the lay reader this is a legal expression meaning established beyond dispute. If it were so established, that would be the end of defendant's case.

7. "We may assume that the evidence used to establish the prima facie case remains relevant, and can help sustain a verdict for the plaintiff if the employer's reason is discredited . . . ." *Loeb v. Textron, Inc.,* 1 Cir., 1979, 600 F.2d 1003, 1015 n.14.

8. Plaintiff argues a further matter, perhaps led on by the court's discussion, whether, if nothing is presented in rebuttal of a prima facie

Before leaving this subject we address the amicus brief filed by the NAACP Legal Defense and Educational Fund, Inc. (NAACP) with the consent of the parties. This charges the court with improperly imposing upon plaintiff a "more burdensome and more convoluted" standard in order to make out a prima facie case. We find no indicia of this in the court's opinion, ante. But were there error, the degree would be irrelevant because, whatever the standard, the court found that plaintiff met it.

Secondly, we note the NAACP's complaint that the court's opinion "suggests that there are different levels of a prima facie case." Presumably by "levels" is meant "weight," or "strength." Whether the court made such a suggestion or not, it is correct so far as its effect upon the case as a whole is concerned. Surely when the trier of fact is determining whether the defendant's articulated reason is "pretextual," the strength of the inferences arising from the evidence that creates the prima facie case must vary, depending upon the nature of that evidence.

■ We turn to consider whether, although there were no underlying legal errors, the court's failure to find for the plaintiff on the evidence as a whole was clearly erroneous. One approach to this question is the issue phrased by the EEOC in its amicus brief:[9]

> "Whether the district court erred as a matter of law in holding that Smith College had rebutted plaintiff's *prima facie* case by stating that he was denied tenure because of an adverse vote of the tenure committee [T & P] without making any findings concerning the specific reasons

underlying the decisions of the individual members of the tenure committee."

It is true that the court found that T & P was the principal arbiter of plaintiff's fate. However, the EEOC overstates the court's obligation. The court did not have to find the full reasoning of each T & P member. Its duty was to find whether or not the T & P members, or enough of the members, voted against plaintiff because of an intent to discriminate. The court put this question early on. Plaintiff would make out his case if he were

> "to show that a specified number of members of the Tenure and Promotion Committee voted adversely to him, that a determinative factor in their decisions to vote adversely was plaintiff's race or national origin, and that had they voted affirmatively plaintiff would have been granted tenure." 495 F.Supp. at 1151.

Subsequently the court answered this;

> "Plaintiff has not demonstrated that any member of T & P who voted on his case, either at the initial consideration or at the reconsideration, voted against him because of plaintiff's race or national origin." *Id.* at 1160.

For good measure the court added,

> "Nor has plaintiff established that any members of the English Department voting on his case, either initially or upon reconsideration, voted adversely to plaintiff on account of his race or national origin." *Id.*

■ The court then discussed the factors which had resulted in the three-sentence reason given by defendants quoted at the outset of this opinion, and found them ac-

case, the prima facie case "compels," or only "warrants," a finding in plaintiff's favor. Since defendant did respond, we are not concerned with that question. ("Compel" has since become the correct answer. *Texas Department of Community Affairs v. Burdine*, ante, n.2.)

**9.** At the same time we remark that the prime, if not sole, purpose of an amicus curiae brief is what its name implies, namely, to assist the court on matters of law. While, presumably, an amicus' position on the legal issues coincides with one of the parties, this does not mean that it is to engage in assisting that party

with its evidentiary claims. *New England Patriots Football Club, Inc. v. University of Colorado*, 1 Cir., 1979, 592 F.2d 1196, 1198 n.3. After properly arguing the sufficiency of defendant's articulation, over half of the EEOC's 25 page brief is directed to discussing the facts favorable to plaintiff, and much of the balance simply repeats the leading Supreme Court cases and our own opinions with which we are thoroughly familiar. Regardless of whether filed with the consent of the parties, the first was improper; the second unnecessary.

ceptable. We need not follow its course item by item, but confine ourselves to certain matters that plaintiff emphasizes. First, plaintiff points to the court's findings that, to some extent, the members of T & P may have tested his scholarship against a somewhat higher standard than had been used (by previous members) in the previous decade. The court found, however, that this was because the times were favorable for so doing, and not in order to discriminate against plaintiff. There was adequate evidence to support this finding, including statistics,[10] the absence of which in some other respects plaintiff complains, post. The court further found that certain procedural irregularities arising out of a changed vote, in plaintiff's disfavor, by one of the English Department members (itself warrantably found to have been in good faith) were not discriminatorily intended. This finding, too, was warranted.

■ This brings us to plaintiff's third major point, that the court failed in the duty imposed on it by F.R.Civ.P. 52(a) to deal with certain evidence offered against defendant as an entity, as well as against the T & P and English Department members individually. Insofar as this is a procedural objection, much of this evidence was introduced by stipulation; the court need not go through the process of repeating it as findings. Nor need it, in making its ultimate findings, make reference to every item of evidence introduced in a nine day trial and indicate why it failed to be persuaded thereby. It is enough that the findings "are sufficient, in the context of the whole record, to reveal the basis for the court's decision and thus permit review." *United States v. Hudspeth*, 9 Cir., 1967, 384 F.2d 683, 686 n.4.

Substantively, plaintiff points particularly to two categories of evidence. First, he says that the district court failed to give proper weight to his "direct" evidence of discrimination. Much so characterized, however, consists simply of nonprobative evidence accompanied by speculation. Other items are minor examples of what assuredly may have constituted poor judgment, and hence may have circumstantial value, but they are hardly "direct" or compelling evidence of racial bias.

Plaintiff also objects to the court's failure to make findings concerning his statistical evidence. Basically, this evidence was that from 1966 to 1974, "the average proportion of tenured minority faculty to all minority faculty was 23.3%, while the comparable proportion of all faculty on tenure to all faculty was approximately double as much." It would have been well to make reference to this; statistical evidence of faculty composition may be probative, though not conclusive, evidence of discrimination. *Sweeney*, ante, 604 F.2d at 113 & n.11. In this case, however, the evidence was far from compelling. Plaintiff skirts entirely the statistics for the actual tenure decisions. Of a total of 180 final decisions between 1960 and 1976, 146, or 81%, were granted tenure; 34 (19%) were not. Of the eleven minority candidates, including plaintiff, nine (82%) received tenure. Plaintiff gets no assistance from such figures.

Coming back to the beginning, and applying the clearly erroneous test, whether we scrutinize for individual error, or look at the court's opinion in the large, we find plaintiff has failed to meet his burden.

*Affirmed.*

---

10. There was substantial evidence that whereas in the 1960's good faculty had been hard to find, the 1970's saw a "new professional situation"—a glut of qualified applicants out of graduate school, which coincided, at Smith, with a period of many fewer faculty retirements than in the decade before, and of fiscal restraints on new hiring and reappointments. The percentage of decisions resulting in tenure dropped from 89% (79/89) in 1960–69 to 74% (67/91) in 1969–76.