**FEDERAL DEPOSIT INSURANCE CORPORATION, In its Corporate Capacity, Plaintiff-Appellee,**

v.

**FIRST STATE BANK OF ABILENE, Defendant-Appellant.**

**No. 85–1363**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1985.

Jack Q. Tidwell, Odessa, Tex., for defendant-appellant.

David S. Jeans, John W. McChristian, Jr., El Paso, Tex., for plaintiff-appellee.

Before ALVIN B. RUBIN, Sam D. JOHNSON and Edith HOLLAN JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge.

Several banks joined in a single loan, governed by a participating loan agreement. The borrower was thereafter forced into involuntary bankruptcy. Some of the banks made a post-petition loan to the trustee, in the hope of improving the debtor's position, but one bank refused to join. Interpreting the language of the participation agreement, the district court held that the post-petition loan was not a "collection expense" or "disbursement" as those terms were used in the agreement. Therefore, the bank that did not participate in the post-petition loan remained entitled to share pro-rata in all collections made on the original loan. The district court's interpretation being patently correct, we affirm. We also affirm the district court's refusal to hear testimony on FDIC's request for attorney's fees and deny FDIC's request for double costs and attorney's fees on appeal.

## I.

Aaron Giebel was indebted to four banks for a total of $5,106,890.42. The debts were unsecured and one of the banks, the First State Bank of Abilene, sought collateral to secure its debt. Giebel offered to pledge certain real property but also wanted the collateral to shore up lines of credit at the other three banks. The four banks then entered an agreement that would enable the Abilene bank, as lead bank, to hold the collateral for the benefit of all four lenders. This agreement was executed in December 1982.

Giebel was subsequently forced into involuntary bankruptcy. As part of an effort to develop for the benefit of all of his creditors some of Giebel's assets that had not been pledged, the First State Bank of Abilene agreed to lend money to the bankrupt estate so that it could engage in an oil-drilling program. Pursuant to the order of the bankruptcy court, the Abilene bank,

as the post-petition financer, was to be paid in full all amounts advanced for the development of the wells out of the first money generated from any production. Thereafter, the pre-petition loan was to be repaid. The drilling program was, therefore, an entirely new project unrelated to the property pledged to secure the pre-petition loan.

Meanwhile, one of the four original participating banks, Metro Bank, was closed and some of its assets, including the Giebel loan, were transferred to the Federal Deposit Insurance Corporation. The Abilene bank then demanded that the FDIC advance a portion of the post-petition financing, which totalled $1,892,000. The Abilene bank contended that the failure of the FDIC to advance a share of the post-petition financing, based on the percentage in which it shared in the original loan participation, would constitute a breach of the servicing agreement and would relieve the Abilene bank of the duty to observe the terms of the servicing agreement. FDIC then sought a declaration of its rights under the servicing agreement.

## II.

The sole support the Abilene bank offers for its position is a provision in the servicing agreement that reads:

All collection expenses, including, but not being limited to, attorney's fees, costs of Trustee's sales, and Court costs, and all disbursements and recovery shall be shared proportionately by each Bank in the ration that each Bank's percentage bears to 100% ownership of the Note.

The Abilene bank contends that the post-petition loan is a "collection expense" or "disbursement" covered by the servicing agreement on the initial loan.

The terms "collection expenses" and "disbursements" are not defined in the agreement. They are, however, words with a generally accepted, plain meaning. To the extent banking usage would give them additional connotations, interpretation must be guided by expert testimony from persons acquainted with banking industry

practices. Such further inquiry is factual in nature. As stated by the court in *United States v. Continental Oil Company,* "When technical terms are used in a contract and are not therein defined, and resort must be had to the testimony of experts with respect to their meaning, the meaning of such terms becomes a question of fact for determination by the trier of facts."[1] Whether as a matter of law, according to the plain meaning rule, or as a question of fact concerning the words' technical meaning in banking terminology, we find correct the district court's determination that the terms "collection expenses" and "disbursements" as used in the servicing agreement were not intended by the parties to include the post-bankruptcy petition loan.

To the extent the district court evaluated the contract terms in light of the expert testimony presented regarding their meaning in the banking industry, the inquiry is protected by the clearly erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure. While there is some testimony to support the Abilene bank's position, the record is replete with support for the district court's conclusion that the terms "collection expenses" and "disbursements" would generally not be regarded by the industry to include an advance of funds of the sort here involved. The district court found that the post-petition loan for the drilling program was entirely unrelated to the collateral securing the original indebtedness and that, as such, it was not a "collection expense" or "disbursement" under the servicing agreement. If the district court had decided the contract to be unambiguous, we would find the district court's conclusion correct as a matter of law. To the extent the district court found the contract less than pellucid and resorted to evidence outside the contract as an aid

to its interpretation, its findings are not clearly erroneous. We therefore affirm.

## III.

The FDIC also argues that a federal district court may award attorney's fees to the successful party in an action brought pursuant to the Declaratory Judgment Act if the court believes, in the exercise of its equitable powers, that the fees for the entire action should be shifted to the unsuccessful party. The FDIC argues that the "obdurate obstinacy"[2] allegedly displayed by the First State Bank of Abilene in these proceedings entitles it to an award of attorney's fees. But as the Supreme Court held in *Alyeska Pipeline Co. v. Wilderness Society,*[3] under the American rule, the prevailing litigant, in the absence of statutory authorization, is not ordinarily entitled to collect attorney's fees. The district court, implicitly rather than explicitly, found no compelling reason to exact fees, and the record supports its action in refusing to hear testimony on the amount of fees incurred by the FDIC.

FDIC requests, and we are authorized to award, double costs and attorney's fees as damages against a party for filing a frivolous appeal.[4] The appellant's initial brief did not refer to the standard of review of the judgment appealed, and did not cite a single authority for any position taken therein. However, appellant's reply brief more adequately, if belatedly, presents and supports its argument on appeal. Because the argument there made gives plausible support to the appeal, we deny the request for double costs and attorney's fees.

For the reasons given, the judgment of the district court is AFFIRMED.

---

1. 364 F.2d 516, 522 (10th Cir.1966); *see also United States v. Lewiston Lime Co.,* 466 F.2d 1358, 1359 & n. 1 (9th Cir.1972); *Roy L. Jones, Inc. v. Home Transp. Co.,* 422 F.2d 179, 181–82 n. 3 (5th Cir.1970).

2. *Thonen v. Jenkins,* 517 F.2d 3, 6 (4th Cir.1975).

3. 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *see also Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.,* 737 F.2d 456, 459 (5th Cir.1984).

4. 28 U.S.C. § 1912; Fed.R.App.P. 38.