# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3051
_____

Cedar Hills Investment Co., L.L.C.

*Plaintiff - Appellant*

v.

Simon Property Group, LP

*Defendant*

Battlefield Mall, LLC

*Defendant - Appellee*
_____

No. 23-3094
_____

Cedar Hills Investment Co., L.L.C.

*Plaintiff - Appellee*

v.

Simon Property Group, LP

*Defendant*

Battlefield Mall, LLC

*Defendant - Appellant*
_____

Submitted: January 14, 2025
Filed: March 24, 2025
_____

Before SHEPHERD, ARNOLD, and ERICKSON, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After it leased out part of the ground under the Battlefield Mall in Springfield, Missouri, Cedar Hills Investment Co., L.L.C. began to suspect that its ground lessee, mall operator Battlefield Mall LLC, was shading revenue-sharing payments owed under the lease. So Cedar Hills sued Battlefield, and, following a bench trial, the district court held that Battlefield had improperly deducted capital expenditures and some administrative costs from shared revenue. Though the district court approved Battlefield's deduction of security costs and other administrative costs, it also held that Battlefield had failed to state charges to subtenants for deducted costs separately as the lease required. In compensation for Battlefield's breaches of the lease, the district court awarded Cedar Hills about $3.5 million in damages. Because we agree that Battlefield's deduction of capital expenditures and its failure to state charges separately breached the lease while its deduction of security costs did not, we affirm in part. But we think that the district court misidentified which administrative costs were deductible and miscalculated Cedar Hills's damages, so we reverse in part and remand for further proceedings.

The revenue Battlefield shares with Cedar Hills under their lease is called Percentage Rent. It equals twenty percent of the amount, if any, by which a figure

called Gross Rent exceeds $3.7 million in a given calendar year. Gross Rent, in turn, is the sum of various actual or imputed revenues Battlefield enjoys, most of which stem from its own or its subtenants' use of leased property. Gross Rent does not, however, include the full amount of "reimbursements, contributions or charges" subtenants pay for enumerated costs "to the extent that each such charge is separately stated" and satisfies other conditions not at issue here. Subtenants' payments for "common area maintenance, taxes, insurance, sprinkler, utilities, heating, ventilating and air conditioning," and the "Merchant's Association or Promotional Fund" are deductible under this proviso, as are "substantially similar" reimbursements to Battlefield for the "costs of the operation and maintenance of the premises leased to them." Since Battlefield passes some of its capital expenditures, security costs, and administrative costs to subtenants, it defends its deductions of these costs as deductions for common area maintenance or substantially similar costs.

Because we disagree with Battlefield's characterization of its capital expenditures, we conclude that deducting them from Gross Rent breached the lease. We defer, as an initial matter, to the district court's determination that the capital expenditures were not common area maintenance costs. Common area maintenance is a term of art in the commercial real estate business. Under Missouri law, which we, like the parties, assume is applicable, that makes its meaning in the business a guide to its meaning in the lease. *See Foley Co. v. Walnut Assocs.*, 597 S.W.2d 685, 689 (Mo. Ct. App. 1980); Restatement (Second) of Contracts § 202(3)(b). But that meaning is not entirely settled, and the district court received conflicting evidence of the term's business usage. In deciding which meaning the evidence best supported, the district court therefore made a factual finding, *see Vandever v. Junior Coll. Dist. of Metro. Kan. City*, 708 S.W.2d 711, 718 (Mo. Ct. App. 1986); *Busch & Latta Painting Corp. v. State Highway Comm'n*, 597 S.W.2d 189, 199 (Mo. Ct. App. 1980), which we review only for clear error, *see FDIC v. First State Bank of Abilene*, 779 F.2d 242, 244 (5th Cir.

1985). In our view, the district court's finding that Battlefield's capital expenditures did not qualify as common area maintenance costs reflects no such error.

There was evidence that the capital expenditures Battlefield deducted from Gross Rent went beyond the bounds of common area maintenance costs. Shortly before and after the parties' lease came into effect, Battlefield's predecessor entered subleases that generally excluded capital expenditures from common area maintenance costs shared with subtenants. Around the same time, a trade group published a glossary that defined common area maintenance to include services benefiting common areas of a mall like cleaning, security, electricity, and maintenance services, the last of which it defined elsewhere as the upkeep or preservation of existing assets. From this definition, the district court could infer that Battlefield's capital expenditures, which it describes as payments to replace existing assets, were unlike the services typically classified as common area maintenance. And further support for this inference came from one of Battlefield's third-party accounting managers. She cast doubt on any analogy between capital replacements and the maintenance component of common area maintenance, testifying that ordinary maintenance costs and capital expenditures are different since the latter fund assets or repairs with useful lives over one year. We recognize that there was countervailing evidence and that the treatment of capital expenditures as common area maintenance costs has long been a matter of negotiation and debate between lessors and lessees. *See, e.g.*, I. Aaron Cohen, *What to Look for When You Negotiate Net Leases*, 4 Prac. Real Est. Law., Sept. 1988, at 23, 31–32; Marc E. Betesh & Nancy M. Davids, *Negotiating Common Area Maintenance Costs*, 23 Prob. & Prop., May/June 2009, at 40, 41; Stuart M. Saft, Commercial Real Estate Transactions § 6:28 (August 2024 update). But we cannot say on the record here that the district court clearly erred by distinguishing Battlefield's deducted capital expenditures from common area maintenance costs.

We are also unconvinced that Battlefield's charges to subtenants for capital expenditures were substantially similar to reimbursements for common area maintenance. Payments substantially similar to reimbursements for common area maintenance are deductible from Gross Rent only if they defray the "costs of the operation and maintenance of the premises leased to" subtenants. Since Battlefield concedes that the deducted capital expenditures funded projects in common areas, they could not have been costs of this sort. This point, we acknowledge, is one Battlefield raised for the first time on appeal. But we think it best to consider it anyway since the relevant facts are undisputed, the enforceability of the relevant provision of the lease is unquestioned, and the correct application of that provision is beyond doubt. *See Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 890–91 (8th Cir. 2009).

Turning to the district court's finding that security costs Battlefield deducted from Gross Rent were common area maintenance costs, we again discern no clear error. Almost all the evidence favored this finding. The subleases Battlefield's predecessor entered just before and after the execution of the lease uniformly classified security services as common area maintenance, the contemporary trade group glossary endorsed the same classification, and Battlefield's accounting expert did so, too.

But we part ways with the district court insofar as it distinguished between deducted administrative costs that qualified as common area maintenance or substantially similar costs and deducted administrative costs that did not. We have no serious quarrel with the district court's holding that the deducted administrative costs were common area maintenance costs, or substantially similar to common area maintenance costs, only insofar as they related "directly to the provision of services on-site" at the Battlefield Mall. Battlefield appears to agree that this holding is limited to services that further the maintenance or operation of the mall, and with that qualification, the holding has adequate support in the record.

Battlefield's accounting expert testified that common area maintenance costs include property management and similar mall costs, which is consistent with commentary suggesting that common area maintenance costs often include an administrative fee. *See, e.g.*, Cohen, *supra*, at 32; Betesh & Davids, *supra*, at 41. The difficulty is that the district court misapplied its holding to the evidence.

The district court did not distinguish common area maintenance and substantially similar costs from other costs by separating the costs of administering maintenance and operational services at the Battlefield Mall from the costs of administering other services. Instead, it did so by separating administrative costs attributable to individuals working at the Battlefield Mall from other administrative costs. That was a mistake because administrators sometimes manage or provide services from afar. The evidence here established, for example, that Battlefield's offsite administrators prepared maintenance strategies for the mall. Yet the district court failed to appreciate that this administrative work was common area maintenance under its own interpretation of the term because it focused on the fact that the administrators were offsite. Other, similar misclassifications of administrative costs may have occurred, but we will not attempt to catalog them given the limited briefing before us. We trust that the district court, on remand, can correctly identify which deducted administrative costs were common area maintenance or substantially similar costs.

To this point, we have not considered how Battlefield charged its subtenants before deducting the charges from Gross Rent. But the how matters, and we conclude that Battlefield's practice of deducting charges that it failed to state separately breached the parties' lease. The lease allowed Battlefield to deduct charges for common area maintenance and other enumerated costs, or for substantially similar reimbursements, only "to the extent that each such charge" was "separately stated." Battlefield, however, deducted flat "operating charge" fees it recovered from its subtenants for a mix of enumerated costs, like security

costs, and non-deductible costs, like capital expenditures. On any reasonable interpretation of the lease, this was impermissible. Rolling up enumerated costs and non-deductible costs into a single fee without distinguishing them is the antithesis of separately stating charges for enumerated costs.

The damages Cedar Hills suffered because Battlefield deducted flat fee recoveries from Gross Rent equaled the Percentage Rent due under the lease after adding the deducted recoveries back to Gross Rent, less the Percentage Rent Battlefield already paid. This follows from the principle that damages for breach of contract should put an injured party in the position it would have enjoyed if its breaching counterparty had performed. *U.S. Neurosurgical, Inc. v. Midwest Division-RMC, LLC*, 303 S.W.3d 660, 667 (Mo. Ct. App. 2010) (en banc). The lease permitted Battlefield to choose whether it stated charges for enumerated costs separately, but it could deduct charges for such costs from Gross Rent only "to the extent" it separately stated them. Since Battlefield chose not to state its charges for enumerated costs separately, performance under the lease meant including recovered charges in Gross Rent and paying the resulting increase in Percentage Rent. *Cf.* 25 Williston on Contracts § 66:96 (May 2024 update).

The district court therefore erred in holding that Cedar Hills's damages equaled the additional Percentage Rent Battlefield would have owed if it had separately stated the deductible and nondeductible components of its flat fees and included only the nondeductible components in Gross Rent. In doing so, the district court allowed Battlefield to limit the Gross Rent it shared with Cedar Hills as if it had separately stated charges to subtenants when, in fact, it had not separately stated them and had agreed to share more rent for that privilege. We appreciate that, in hindsight, the higher shared amount seems excessive to Battlefield. Though separate statement of charges might have benefited Cedar Hills by allowing it to rely on subtenants to identify inflated charges, Cedar Hills does not contend that Battlefield actually inflated any charges. Nor does Cedar

Hills contend that it would have done anything differently if Battlefield had separately stated its charges. Even so, Battlefield has not argued that its option to forgo separately stating charges and share more rent is unenforceable—because, for instance, it is a penalty for failing to state charges separately rather than a legitimate alternative method of performance, *see* Restatement (Second) of Contracts § 356 cmt. c; *Buchanan v. La. Purchase Exposition Co.*, 149 S.W. 26, 30 (Mo. 1912), or for any other reason. And without such an argument before us, we are unwilling to nullify the revenue-sharing formula to which Battlefield expressly agreed.

We reject, moreover, Battlefield's argument for reducing damages because of profits it generated for Cedar Hills by charging flat fees to subtenants. When Battlefield began charging subtenants flat fees for various costs, it profited because it held actual costs below the fee amounts. The parties had agreed to limit deductions for any cost Battlefield passed on to subtenants to a fraction of the corresponding mall-wide cost, so Battlefield deducted the fees only in part, and a share of this profit went into the Gross Rent that Battlefield shared with Cedar Hills as Percentage Rent. But this partial deduction was not a benefit to Cedar Hills; it was a breach of the revenue-sharing provision of the lease. Because Battlefield did not separately state the fees, it could not deduct the fees even in part. By deducting part of the fees anyway, Battlefield understated Gross Rent and paid Cedar Hills less Percentage Rent than it should have. The amount of Battlefield's underpayment was, therefore, Cedar Hills's damages.

With these observations, we reverse the district court's damages award with respect to Cedar Hills's claim that Battlefield deducted charges from Gross Rent that it failed to state separately, and we reverse the district court's judgment with respect to Cedar Hills's claim that Battlefield improperly deducted administrative costs from Gross Rent. We remand for further proceedings consistent with this

opinion, including a recalculation of damages and any interest. In all other respects, we affirm. We grant the parties' joint motion to supplement the record.

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent in part on one ground: The district court did not err in its damages calculation pursuant to the benefit-of-the-bargain standard. Otherwise, I concur in the Court's opinion.

Under Missouri law, damages for breach of contract are measured by the benefit-of-the-bargain rule. Dierkes v. Blue Cross & Blue Shield of Mo., 991 S.W.2d 662, 669 (Mo. 1999) (en banc). Under this rule, "a successful plaintiff is entitled to the loss the fulfillment of the contract would have avoided or that its breach has caused." Id. However, the rule is not intended to "place [a] plaintiff in a better position than he would have been had the contract been completed on both sides." Boten v. Brecklein, 452 S.W.2d 86, 93 (Mo. 1970) (citation omitted).

Cedar Hills contends that the bargain was for Battlefield to pay Gross Rent—with none of the exclusions in § 2.02(C)—*unless* Battlefield separately stated such charges. Battlefield argues the bargain was to pay Gross Rent less the agreed-upon exclusions, and that separately stating the charges was merely a verification mechanism.[1] As the majority acknowledges, "Cedar Hills does not contend that Battlefield actually inflated any charges"; that Cedar Hills "would have done anything differently if Battlefield had separately stated its charges"; or that it would have received additional Gross Rent if Battlefield had separately stated the charges. See ante, at 7. Thus, awarding Cedar Hills damages pursuant to the majority's analysis "place[s Cedar Hills] in a better position than [it] would

---

[1]As noted by the majority, Battlefield disputes that it breached the separately stated requirement at all. Its arguments on damages assume that there was a breach.

have been" had Battlefield separately stated the charges. See Boten, 452 S.W.2d at 93 (citation omitted).

This interpretation better aligns with Missouri law on benefit-of-the-bargain damages. "'Damages for breach of contract are limited to *the loss of the benefit itself*,' with the goal of placing the wronged party 'in the position he would have been in had the contract been performed.'" Randy Kinder Excavating, Inc. v. J.A. Manning Constr. Co., Inc., 899 F.3d 511, 520 (8th Cir. 2018) (emphasis added) (applying Missouri law) (citation omitted). The panel majority concedes that its measure of damages "seems excessive to Battlefield." Ante, at 7. Such a measure of damages is incompatible with Missouri courts' instruction not to "place the plaintiff in a better position than [it] would have been had the contract been completed on both sides." See Boten, 452 S.W.2d at 93 (citation omitted); see also Arcese v. Daniel Schmitt & Co., 504 S.W.3d 772, 784 (Mo. Ct. App. 2016) ("The law of contracts is intended to give an injured party the benefit of the bargain, not the benefit of the bargain and a windfall." (citation omitted)).

Thus, I would hold that this breach did not result in any damages and that the district court did not err in finding that the only damages in this case are those "relative to the expense categories improperly treated as Excluded Items."[2] I would thus remand to the district court for calculation of damages in accordance with this Court's decision regarding expense categories improperly treated as Excluded Items. I agree with the remainder of the majority's analysis. See ante, at 3-6.

_____

[2]The district court did not expressly determine that Battlefield's breach of the "separately stated" requirement did not result in any damages. However, by awarding Cedar Hills' damages only "relative to the expense categories improperly treated as Excluded Items"—i.e., only for the Counts alleging Battlefield improperly excluded certain expense categories—the district court effectively came to the conclusion that Battlefield's breach of the "separately stated" requirement did not result in any damages unique to that particular breach.